UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VICTORIA GREEN, as Administrator of the Estate of Craigory Green,<br><br>Plaintiff,<br><br>v.<br><br>STEVE MEEKS; KIM HUGO; MOHAMMED SIDDIQUI; GAIL WALLS; JOHN SHEPHERD; MICHAEL MOLDENHAUER; VIPIN SHAH; ERIN MEARS-ATTIG; RASHIDA POLLION; MARY ZIMMER; BARBARA WINTER; WEXFORD HEALTH SERVICES, INC.; AND UNKNOWN WEXFORD DOCTOR,<br><br>Defendants. | No. 19 C 7089<br><br>Judge Thomas M. Durkin |

MEMORANDUM OPINION AND ORDER

Plaintiff Victoria Green, as Administrator of the Estate of Craigory Green, brings this action against Defendants for failing to provide adequate medical care while Mr. Green was in the custody of the Illinois Department of Corrections (IDOC), which failure she claims ultimately resulted in his death. Defendants have moved to transfer this case to the United States District Court for the Southern District of Illinois. R. 43. For the following reasons, Defendants' motion is granted.

Background

In 2011, while incarcerated at Cook County Jail, a biopsy of Craigory Green's liver performed at Stroger Hospital showed that he likely suffered from primary sclerosing cholangitis (PSC). R. 39 ¶ 23; R. 48 at 2. PSC is a rare disease that causes a patient's bile ducts to become inflamed and ultimately restricts them from carrying

digestive liquid to the intestine for elimination. R. 39 ¶ 24. The cause of PSC is unknown, and absent a liver transplant, the disease will ultimately lead to liver failure and death. *Id.*

In September 2012, Green entered the custody of the Illinois Department of Corrections. *Id.* ¶ 26. Green remained at the Northern Reception and Classification Center (NRC) for two weeks before being transferred to the Menard Correctional Center. *Id.* ¶ 28. Over the next six years at Menard, Green's condition progressively worsened. *See id.* ¶¶ 29-45. According to the complaint, during that period Green repeatedly informed Menard medical staff about his PSC diagnosis but that they failed to take steps to appropriately evaluate or treat him. *Id.* ¶ 45. In 2018, with his condition deteriorating, Green was admitted on several occasions to the Southern Illinois Memorial Hospital and once to the St. Louis University Hospital. *See id.* ¶¶ 46-47, 54, 61, 70, 74, 80.

Plaintiff contends that Dr. Steve Meeks, IDOC's former Chief of Medical Services, had ultimate authority to approve Green's liver transplant, but that he refused to do so due to Green's status as a prisoner and the prison's unwillingness to pay. *Id.* ¶ 54; R. 48 at 4. Green's condition became sufficiently grave that Meeks ultimately reversed course and approved the procedure in October 2018. R. 48 at 4. On October 4, 2018, Green was admitted to Loyola University Medical Center to confirm his eligibility for the liver transplant. R. 39 ¶ 82. Before Green could undergo the procedure, he died of organ failure on October 28, 2018. R. 48 at 4.

**Legal Standard**

A "district court may transfer any civil action to any other district or division where it might have been brought" for "the convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). The statute "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "The statute permits a 'flexible and individualized analysis' and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (quoting *Stewart*, 487 U.S. at 29). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). In considering these factors, the Court is "permitted [and] in some instances [may be] required, to make whatever factual findings are necessary prior to issuing a [transfer decision]." *In re LimitNone, LLC*, 551 F.3d 572, 577 (7th Cir. 2008). The Court may consider affidavits in making such findings. *See Bd. of Trustees of the Auto. Mechanics' Local No. 701 Union & Industry Welfare Fund v. Brown*, 2014 WL 4057367, at *1 (N.D. Ill. Aug. 14, 2014); *Simonian v. Monster Cable Prods., Inc.*, 821 F. Supp. 2d 996, 998 (N.D. Ill. 2010); *Simonian v. Hunter Fan Co.*, 2010 WL 3975564, at *1 (N.D. Ill. Oct. 7, 2010). The party seeking transfer "has the burden of

establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey*, 796 F.2d at 220-21.

## Analysis

### I. Convenience

The convenience factors include: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Law Bulletin Pub., Co. v. LRP Publications, Inc.*, 992 F. Supp. 1014, 1017 (N.D. Ill. 1998).

A plaintiff's choice of forum receives substantial deference, especially when it is the plaintiff's home forum. *Id*. However, the chosen forum "receives less deference 'when another forum has a stronger relationship to the dispute or when the forum of plaintiff's choice has no significant connection to the situs of material events.'" *Bd. Of Trustees of the Auto. Mechanics' Local No. 701 Union*, 2014 WL 4057367, at *2 (quoting *Moore v. Motor Coach Indus.*, 487 F.Supp.2d 1003, 1007 (N.D. Ill 2007)); *see also Carter v. Baldwin*, 2017 WL 3310976, at *2 (N.D. Ill. Aug. 3, 2017) ("a plaintiff's choice of forum merits less deference where the events giving rise to the suit did not occur there.").

This action concerns the denial of medical care while Green was incarcerated at Menard Correctional Center, which is located in Randolph County, Illinois. Randolph County falls within the boundaries of the Southern District of Illinois. Plaintiff acknowledges that "[i]f this were a run-of-the-mill deliberate indifference

case that was focused primarily on the sub-standard care [Green] received from his treating doctors and nurses at Menard Correctional Center, Plaintiff would agree that transfer would be appropriate." R. 48 at 6. However, Plaintiff contends that this case is different because the most significant violation occurred when Meeks, from his Chicago office, repeatedly refused to approve a timely liver transplant.

To begin, the parties dispute whether Meeks was in Chicago (located in the Northern District) or Springfield (Central District) when he made those treatment decisions. But regardless, the situs of material events is not where Meeks' alleged misconduct occurred, but where Green was located when he was injured as a result. *See Carter*, 2017 WL 3310976, at *2 (holding that the situs of material events was at the prison where Plaintiff was located and injured, not at the offices of Wexford or the IDOC Acting Director); *see also Boyd v. Snyder*, 44 F. Supp. 2d 966, 970-71 (N.D. Ill. 1999) (accord). Moreover, while Plaintiff's motion attempts to paint Meeks as solely or primarily responsible for the misconduct at issue, *see* R. 48 at 4 ("it appears that *all* of the alleged misconduct that caused [Green's] untimely death occurred in [the Northern District]. . . . [Meeks] alone appears responsible for [Green's] death from complications of primary sclerosing cholangitis," the complaint names 11 additional individual Defendants, ten of whom work and provided care for Green at Menard (the eleventh is the IDOC's Agency Medical Coordinator). Plaintiff correctly points out that Green was diagnosed with PSC and ultimately died in the Northern District of Illinois. But the events "giving rise to" this action concern Green's delayed treatment, not whether he had PSC or that it caused his death. Indeed, that Mr.

5

Green was denied access to a possible life-saving treatment for six years is what makes Plaintiff's allegations so grave. And for that entire period, except for two weeks at NRC and the three-and-a-half weeks at Loyola before his death, Green was incarcerated at Menard. Accordingly, Plaintiff's choice of forum merits less deference and the situs of material events strongly favors transfer to the Southern District.

The third factor, access to sources of proof, is neutral. There are likely relevant medical records and documents located at the Stroger, Loyola, Southern Illinois Memorial, and St. Louis University hospitals, as well as at Menard and the Cook County Jail. Neither party suggests that these records cannot be easily transferred to either the Northern or Southern District. *See Handler v. Kenneth Allen & Assocs., P.C.*, 2011 WL 1118499, at *3 (N.D. Ill. Mar. 24, 2011) ("When documents are easily transferrable, access to proof is a neutral factor.") (quoting *First Nat'l Bank v. El Camino Res. Ltd.*, 447 F. Supp. 2d 902, 912 (N.D. Ill. 2006)).

The fourth factor, the convenience of witnesses, "is often viewed as the most important factor in the transfer balance." *Law Bulletin*, 992 F. Supp. at 1018 (quoting *Rose v. Franchetti*, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989)). In assessing this factor, courts should consider not only the number of witnesses but also the nature and importance of the prospective witnesses' testimony. *See id.* The convenience of third-party witnesses is typically given more weight than that of party witnesses. *Bd. Of Trustees of the Auto. Mechanics' Local No. 701 Union*, 2014 WL 4057367, at *3; *Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1061 (N.D. Ill. 2015).

6

Plaintiff identifies five doctors from Stroger, three doctors from Loyola, and an intake nurse at NRC that she anticipates will testify, all of whom still practice or reside in the Northern District. For their part, Defendants maintain that the most pertinent non-party witnesses will be the medical and correctional staff at Menard, Southern Illinois Memorial, and St. Louis University Hospital who treated and/or interacted with Green during the time in which Defendants' alleged misconduct occurred. Courts generally give greater weight to the convenience of identified witnesses over unidentified witnesses. *Consumer Fin. Prot. Bureau v. Golden Valley Lending, Inc.*, 2017 WL 3970514, at *2 (N.D. Ill. Sept. 8, 2017) (collecting cases). Here, that consideration favors Plaintiff as Defendants do not list non-party witnesses by name (although the Court grants Defendants some leeway because Plaintiff has not yet provided them copies of Green's medical records). But at the same time, "[d]uplicative testimony is discounted." *Rosen*, 152 F. Supp. 3d at 1061; *see also Florsheim Grp., Inc. v. Rosa Andreu Vila*, 2001 WL 1263358, at *2 (N.D. Ill. Oct. 18, 2001) (discounting list of cumulative witnesses); *Dunn v. Soo Line R. Co.*, 864 F. Supp. 64, 66 (N.D. Ill. 1994) (same). Defendants do not dispute Green's PSC diagnosis at Stroger. Nor do they contest that Green's condition caused his death at Loyola. The Court thus doubts that all of Plaintiff's identified witnesses are necessary to present non-cumulative testimony about Green's diagnosis, prognosis, and death. Moreover, Plaintiff does not allege that Defendants' misconduct began before Green was transferred to Menard. And the alleged misconduct ceased once Meeks approved the liver transplant and Green was transported to Loyola. Thus, all the actions (or lack

thereof) central to Plaintiff's claims occurred in the intervening six years while Green was in the care of correctional and medical staff at Menard and the nearby hospitals. As such, the Court finds it likely that the majority of third-party witnesses with information most relevant to this dispute are located at Menard, Southern Illinois Memorial, and St. Louis University Hospital, which are in or near the Southern District. This appears particularly true considering that Green spent more *years* at Menard than he did *weeks* at NRC and Loyola. Nevertheless, Plaintiff represents that the doctor who primarily treated Green during his six visits to Southern Illinois Memorial has since relocated to DuPage County, which is in this district. Moreover, although Plaintiff's prospective witness list appears cumulative, there will most likely be a non-party witness from Stroger, Loyola, and NRC. Accordingly, while more non-party witnesses with information central to this dispute are likely located in or near the Southern District, some third-party witnesses are in the Northern District. Overall, the Court finds this factor either slightly favors transfer or is neutral.

Turning to the fifth factor, the convenience of the parties, courts generally are to consider the parties' "respective residences and abilities to bear the expense of trial in a particular forum." *Von Holdt v. Husky Injection Molding Sys., Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995). "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Research Automation*, 626 F.3d at 978. Plaintiff states that transfer "would work substantial inconvenience," but does not explain how that is so, nor does she contend that she cannot afford to litigate this case in the Southern District. Meanwhile, all

8

eleven individual Defendants reside in the Southern District of Illinois or in northern Missouri.[1] Plaintiff contends that the individual Defendants will not incur travel and lodging costs if the trial occurs in Chicago because they will be covered by their employer. Perhaps, but neither party alleges (nor does the Court believe) that costs will be prohibitively expensive to either party to litigate in either venue. It is common for parties to attend all or most of a trial. Trying this case in Chicago would take the physician Defendants away from their practices for possibly the length of the trial, disrupting patient appointments and care, and would be less convenient than having them attend the trial and testify in the Southern District (assuming they testify live). And coordinating for 11 healthcare professionals living in southern Illinois and northern Missouri to stand trial in Chicago will undoubtedly prove more difficult than having Plaintiff try this case in the Southern District, especially in the absence of any contention that she is unable to do so. Accordingly, the convenience of parties' factor weighs in favor of transfer.

## II.  Interest of Justice

"The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Research Automation*, 626 F.3d at 978. "For this element, courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving

---

[1] Plaintiff disputes Meeks' place of work and residency. The Court has no reason to doubt his affidavit that he accepted a job at Southern Illinois University and will reside in Williamson County, which is in the Southern District.

controversies in each locale; and the relationship of each community to the controversy." *Id.* (internal citations omitted). "The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Id.*

The first two interest of justice factors are neutral. The average time from filing to trial in civil cases in each forum is nearly identical – 39 months in the Northern District and 38.6 months in the Southern District for the 12-month period ending December 31, 2019 – and courts in both districts are equally capable of applying the relevant law.[2] Factors three and four – the respective desirability of resolving controversies in each locale and the relationship of each community to the controversy – weigh in favor of transfer. As previously discussed, all the events giving rise to this lawsuit occurred while Green was incarcerated at Menard, and thus the Southern District has a closer relationship to the controversy.

In sum, one convenience factor weighs against transfer (plaintiff's choice of forum), one factor is neutral (access to proof), one factor is neutral or slightly supports transfer (convenience of witnesses), and two factors strongly favor transfer (situs of material events and convenience of parties). Turning to interest of justice, two factors are neutral (speed to trial and familiarity with law) and two favor transfer

---

[2] Defendants cite the filing to disposition time for the 12-month period ending March 31, 2018 – 37.1 months in the Southern District and 34 months in the Northern District. The statistics cited by the Court here are the most current available as of May 14, 2020 on the Federal Court Management Statistics page of the United States Courts website. *Available at* https://www.uscourts.gov/report-name/federal-court-management-statistics (last visited May 14, 2020).

(desirability of resolving controversy in each locale and relationship of each community to the controversy). Taking these considerations together, the Court finds that Defendants have met their burden of demonstrating that this action should be transferred to the Southern District.

## Conclusion

For the reasons stated above, Defendants' motion to transfer, R. 43, is granted, and the Clerk of Court is directed to transfer this case to the Southern District of Illinois.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: May 15, 2020