IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **Victoria Green**, as Administrator for the Estate of Craigory Green,<br><br>Plaintiff,<br><br>v.<br><br>**Steve Meeks et al.,**<br><br>Defendants. | No. 20-cv-463<br><br>Hon., Nancy J. Rosenstengel<br>District Judge<br><br><br><br>Jury Trial Demanded |

**PLAINTIFF'S RESPONSE TO THE
WEXFORD DEFENDANTS' MOTION TO DISMISS**

Craigory Green died in the custody of the Illinois Department of Corrections because the doctors and other individuals responsible for his medical care ignored his rapidly degenerating health and refused to provide him with a liver transplant that they knew he needed to live. Craigory's aunt, Victoria Green, brought this civil-rights suit against the doctors and other employees of the IDOC and Wexford Health Services who were deliberately indifferent to Craigory's serious medical needs. Victoria also alleges that Wexford is liable for the violations of Craigory's rights under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), as well as under a theory of respondeat superior.

Defendants Wexford Health Services, Dr. Mohammed Siddiqui, Dr. John Shepherd, Dr. Vipin Shah, Dr. Michael Moldenhauer, Rashida Pollion, Mary Jo

1

Zimmer, and Barbara Winter (collectively the Wexford Defendants) have filed a partial motion to dismiss, arguing that counts four through six of the complaint are deficient because they are not supported by an affidavit. This argument is meritless because it ignores the Seventh Circuit's express holding that the Illinois statute requiring an affidavit to file medical malpractice claims does not provide a basis on which a district court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6).

The Defendants also contend that the Court should dismiss count six of the complaint, which alleges that Wexford Health Services is liable under a theory of respondeat superior. Although the Seventh Circuit has previously extended the more limited liability afforded to municipalities under *Monell* to private companies, this extension is unsupported by law or policy. Rather than uncritically accepting the erroneous application of *Monell* liability to private companies like Wexford, this Court should adopt the approach suggested by the Seventh Circuit in *Shields v. Illinois Department of Corrections*, 746 F.3d 782 (7th Cir. 2014) and apply respondeat-superior liability to Wexford. Finally, even if *Monell* liability applies to the constitutional claims against Wexford, the Court should not dismiss the respondeat superior claim because Wexford is still liable for the state-law torts of its employees.

**Factual Background**

In 2010, Craigory Green was being held at the Cook County Jail when he began experiencing abdominal pains, jaundice, nausea and vomiting, and unintended weight loss. Second Am. Compl., dkt. 39, ¶ 21. A liver biopsy conducted at Stroger Hospital ultimately revealed that Craigory suffered from primary sclerosing cholangitis (PSC)—a rare liver disease with an unknown cause. *Id.* ¶¶ 23–24. Although PSC progresses slowly, over time it will obstruct liver function by creating scar tissue that blocks the flow of bile. *Id.* ¶ 24. The only known cure for PSC is a liver transplant; without one, a PSC patient will die. *Id.*

In 2012, Craigory was relocated to the Menard Correctional Center, where doctors employed by Wexford and the IDOC largely ignored Craigory's life-threatening diagnosis. For example, Defendants Shepherd and an unknown Wexford doctor failed to review or seek out Craigory's records from Stroger Hospital despite metabolic panels showing serious liver problems. *Id.* ¶ 26–33. And despite telling his medical providers about his PSC diagnosis, over the next six years Craigory was not given a treatment plan that would address his underlying liver condition, possibly because his treating doctors and nurses continually failed to obtain his Stroger records. *Id.* ¶ 45.

In 2018, Craigory's condition became so severe that he was sent to be treated at Southern Illinois Memorial Hospital in Carbondale, where doctors

3

quickly obtained his Stroger records to confirm his PSC diagnosis. *Id.* ¶ 46. Craigory was then transferred to St. Louis University Hospital for a liver transplant evaluation. *Id.* But despite overwhelming evidence that Craigory's liver condition was rapidly deteriorating, Defendant Meeks, the Chief of Health Services for the Illinois Department of Corrections, refused to approve Craigory for a transplant evaluation. *Id.* 47. Craigory was transferred back to Menard and then to Southern Illinois Memorial Hospital as his end-stage liver disease predictably worsened. *Id.* ¶¶ 47–54, 61. For months, Dr. Meeks continued to deny Craigory the transplant he needed to live solely because he was an inmate. *Id.* ¶¶ 53–54, 59, 65–66, 68–69, 81.

Eventually, Craigory's illness became so severe—and his need for a liver transplant so extreme—that Dr. Meeks reversed course and permitted him to be transferred to Loyola Hospital near Chicago for a transplant evaluation. *Id.* ¶ 80–81. Tragically, this decision came too late; although Craigory was quickly approved for a liver transplant and placed on the waiting list, before he could receive one his PSC caused his body to enter septic shock and he suffered massive organ failure. *Id.* ¶ 86, 89, 94. As a result of the Defendants' misconduct, Craigory died of a curable disease on October 28, 2018. *Id.* ¶ 96. He was just 30 years old. *Id.* ¶ 1.

Victoria Green, Craigory's aunt and the administrator of his estate, filed this lawsuit against Meeks, other IDOC employees, and Wexford Health

4

Services and Wexford employees who consciously disregarded Craigory's serious medical needs and caused his death. The Wexford Defendants filed a partial motion to dismiss the complaint on February 11, 2020. Dkt. 42. Briefing on the motion was stayed pending resolution of the Defendants' Motion to Transfer Venue. That motion was decided on May 15, 2020, and Plaintiff Victoria Green submits this response to the pending Motion to Dismiss.

## Argument

### I. The Illinois Affidavit Requirement for Medical Malpractice Actions Is Not a Basis to Dismiss a Federal Complaint

The Defendants erroneously argue that counts four and five should be dismissed because Illinois law requires a complaint alleging medical malpractice to be supported by an affidavit from a medical professional. *See* 735 Ill. Comp. Stat. 5/2-622. But recent and unequivocal Seventh Circuit precedent holds that the affidavit requirement simply does not apply at this stage of the litigation. In *Young v. United States*, 942 F.3d 349 (7th Cir. 2019), the Seventh Circuit explained that "a complaint in federal court cannot properly be dismissed because it lacks an affidavit and report under § 5/2-622." *Id.* at 351. Federal law, not state statute, governs the pleading requirements in federal court, and "Rule 8 of the Federal Rules of Civil Procedure . . . does not require attachments." *Id.* Following *Young*, district courts have uniformly refused to dismiss medical-malpractice claims for failure to comply with section 5/2-622. *See Ingram v. Sellars*, 20-cv-209-NJR, 2020 WL 2769996, at *3 (S.D. Ill. May 28,

2020) (Rosenstengel, J.) (noting that under *Young* the affidavit must be submitted "before the completion of the summary judgment phase of the case"); *Thornton v. Doe*, No. 19-cv-1371-SMY, 2020 WL 2513763, at *4 (S.D. Ill. May 15, 2020); *Beard v. United States*, No. 20-CV-00047-JPG, 2020 WL 1692435, at *2 (S.D. Ill. Apr. 7, 2020); *Ickes v. United States*, No. 18-cv-2118-JPG, 2020 WL 917181, at *3 (S.D. Ill. Feb. 26, 2020); *see also Kessler v. Pass*, No. 18-cv-530-JPG, 2020 WL 668128, at *1 (S.D. Ill. Feb. 11, 2020) (referring to the court's prior decision holding that the affidavit requirement did not apply until summary judgment); *Brown v. Wexford Health Sources, Inc.*, No. 18-cv-5955, 2020 WL 362785, at *3 (N.D. Ill. Jan. 22, 2020) (noting that *Young* makes section 5/2-622 inapplicable until summary judgment).

Notably, the Wexford Defendants fail to even cite *Young*—or any other federal case—in contending that counts four and five should be dismissed. *See* dkt. 42, at 5–7. In the absence of any authority whatsoever suggesting that section 5/2-622 is relevant to a motion under Federal Rule of Civil Procedure 12(b)(6), the Court should deny the motion to dismiss the medical-malpractice claims.

## II.   As a Private Company, Wexford Should Be Subject to Respondeat Superior Liability Rather than Liability Under *Monell*

The Wexford Defendants also seek dismissal of count six, which alleges that Wexford is liable for its employees' violations of Craigory Green's constitutional rights under a theory of respondeat superior. "Under respondeat

6

superior, an employer may be held liable for the negligent, willful, malicious or even criminal acts of its employees when those acts are committed within the scope of [the employee's] employment." *Johnson v. Cook County*, 526 F. App'x 692, 697 (7th Cir. 2013) (quoting *Adames v. Sheahan*, 233 Ill. 2d 276, 298 (2009)) (internal quotation marks omitted) (alteration in original).

The Wexford Defendants contest the sufficiency of the allegations in count six in only one narrow respect: they argue that the doctrine respondeat superior cannot apply to Wexford, and that the company should instead benefit from the more stringent standard of liability under *Monell*. Dkt. 42, at 7–8. Importantly, as the Defendants recognize, this argument is relevant to the respondeat-superior claim only insofar as it relates to Wexford's liability for constitutional violations; it does not implicate the Plaintiff's state-law claims against Wexford. *Id.* at 8 ("Defendants acknowledge that *respondeat superior* is a viable theory of liability for Plaintiff's state law medical malpractice claims . . . ."). Because there is no basis to dismiss the medical-malpractice claims for the reasons explained above, the Court can deny the motion to dismiss the respondeat superior claim against Wexford without reaching the question of whether *Monell* liability should apply to the constitutional claims.

Even if the Court were to decide that question, however, the Seventh Circuit has all but held that *Monell* liability cannot apply to private companies like Wexford. In *Shields*, the court cautioned that "[w]e should not insulate

7

employers from *respondeat superior* liability under § 1983 without powerful reasons to do so." *Shields*, 746 F.3d at 792. The court noted that the text and legislative history of section 1983 do not support the extension of *Monell* liability to private companies, and observed that "current Supreme Court precedent seems to support rather than reject *respondeat superior* liability for private corporations." *Id.* at 793. This outcome also tracks the distinction in qualified immunity jurisprudence between public and private corporations. *Id.* at 793–94. And finally, as a matter of policy, the financial incentives for private corporations like Wexford to "provide substandard care" weigh in favor of permitting respondeat superior liability to deter misconduct. *Id.* at 794. In sum, the Seventh Circuit has observed that all considerations of law and policy support recognizing the claim of respondeat superior liability against Wexford for constitutional violations.

Since the Seventh Circuit issued its opinion in *Shields*, the court has not had an opportunity to revisit the question in an appropriate case—though it has repeatedly signaled its readiness to do so, including in an en banc opinion. *See, e.g.*, *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc) ("We questioned in *Shields* whether private corporations might also be subject to *respondeat superior* liability, unlike their public counterparts, but we have no need in the present case to address that question and thus we leave it for another day." (citation omitted)); *Norwood v. Ghosh*, 723 F. App'x 357, 361 (7th

8

Cir. 2018) (noting that the court in *Shields* "invited fresh litigation of the issue" but that the plaintiff had not properly presented it to the district court); *see also Burton v. Ghosh*, No. 19-1360, 2020 WL 3045954, at *10 n.7 (7th Cir. June 8, 2020) (declining to consider the necessity of *Monell* allegations against Wexford where the defendants failed to raise the issue in their motion to dismiss). This case presents an opportunity to heed the Seventh Circuit's admonitions and apply respondeat superior to the constitutional claims against Wexford.

## Conclusion

The Wexford Defendants have failed to identify any legal basis to dismiss counts four, five, or six of the complaint. The affidavit requirement of 735 Ill. Comp. Stat. § 5/2-622 does not apply at this stage of the litigation, and the claim of respondeat superior against Wexford is undisputedly cognizable with respect to Plaintiff's state-law claims (and likely with respect to her federal constitutional claims as well). Plaintiff therefore respectfully requests that the Court deny the motion to dismiss.

///

June 16, 2020                                   Respectfully submitted,

                                            /s/ John Hazinski
                                            *Attorney for Plaintiff Victoria Green*

Arthur Loevy
Jon Loevy
Sarah Grady
Steve Weil
John Hazinski
Loevy & Loevy
311 N. Aberdeen St.
Chicago, Illinois 60607
(312) 243-5900
hazinski@loevy.com

## CERTIFICATE OF SERVICE

    I, John Hazinski, an attorney, hereby certify that on June 16, 2020, I caused the foregoing Plaintiff's Response to the Wexford Defendants' Motion to Dismiss to be filed using the Court's electronic filing system, thereby effectuating service on all counsel of record.

                                               /s/ John Hazinski
                                             *Attorney for Plaintiff Victoria Green*