IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **VICTORIA GREEN,** *as Administrator of the Estate of Craigory Green*, <br><br>**Plaintiff,**<br><br>v.<br><br>**STEVEN MEEKS,** *et al.*,<br><br>**Defendants.** | Case No. 20-cv-00463-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on the Motion for Entry of ESI Protocol filed by Plaintiff Victoria Green. (Doc. 96). On August 5, 2020, Chief Judge Rosenstengel conducted a scheduling conference, and the parties were given two weeks to submit a joint proposed ESI protocol. On August 20, 2020, Plaintiff filed this motion along with a proposed Discovery Plan for Electronically Stored Information ("Proposed ESI Protocol"). Defendants Meeks, Walls, and Mears-Attig ("IDOC Defendants") and Defendants Wexford Health Sources, Inc., Siddiqui, Sheperd, Shah, Moldenhauer, Pollion, Zimmer, and Winter ("Wexford Defendants") have both filed objections.

The Proposed ESI Protocol allows for the search and production of electronically stored information ("ESI") using 40 search terms to be applied to the email accounts of 15 individuals who are employed by Wexford Health Sources, Inc. ("Wexford") or the Illinois Department of Corrections ("IDOC"), 14 search terms to be applied to these employees' personal email accounts, and 38 terms to be applied to the data servers of Wexford and IDOC. (*See* Doc. 96-1, p. 10-13; Doc. 97, p. 1-2). The Proposed ESI Protocol contains a "safety valve" provision requiring the parties to meet and confer when a search yields over 20,000 documents. (Doc. 96-1, p. 4).

Defendants' main objection to the Proposed ESI Protocol is that the proposed search terms are broad and would result in the collection of an unreasonably large number of unresponsive and irrelevant documents and information, including vast amounts of protected health information of other inmates who have no connection to this litigation. In support of this argument, they state that Wexford provides medical staffing and services for all adult Illinois prisons, which collectively house around 32,048 inmates, and that a search containing the limited terms "Craigory" "Craigory Green" and "M31534" resulted in 1700 emails and electronic documents. They argue this search gives an indication of the number of documents that could be netted by a search using broader terms. Wexford Defendants ask that the search terms be limited to "Craigory" "Craigory Green" and "M31534," and the IDOC Defendants ask that the search term "Green" be used only along with Craigory Green's inmate number. The Defendants believe that limiting the search terms in this way will prevent the collection of data unrelated to Craigory Green and this litigation.

The Court finds that Defendants have not provided sufficient information to support the contention that the proposed search terms would produce a large number of irrelevant documents. While searches using the proposed terms are likely to yield numerous results, the large production of documents, alone, is not an indication that the search terms are too broad or that the information produced from those terms will be unrelated to the case. The claim that the search terms will yield documents that include the protected health information of current and former inmates, other than Craigory Green, also does not demonstrated that the information produced would not be relevant. Plaintiff is alleging that Craigory Green died of a curable disease due to the widespread customs and practices of Wexford. This requires Plaintiff to present evidence of a "widespread custom or practice" or a "series of bad acts," not just isolated events of inadequate medical care. *See Shields v. Ill. Dep't of Corr.,* 746 F. 3d 782, 796 (7th Cir. 2014). "District courts addressing discovery-related disputes in cases involving *Monell* claims have routinely recognized that such claims often

require a broad and substantial amount of discovery that would not be involved if the plaintiff sued only the individuals directly involved in the deprivation of his rights." *Lymon v. Chamberlain*, No. 17 CV 50093, 2020 WL 6940985, at *3 (N.D. Ill. Nov. 4, 2020) (quoting *Awalt v. Marketti,* No. 11 C 6142, 2012 WL 6568242, at *3 (N.D. Ill. Dec. 17, 2012)). *See also Andrews v. Sangamon Cty*. Ill., No. 18-cv-110, 2018 WL 6523186, at *1 (C.D. Ill. Dec. 11, 2018) (stating that the names of other inmates are relevant and may lead to admissible information in a *Monell* claim regarding the treatment of mentally ill prisoners).

Because Defendants arguments are woefully inadequate and fail to demonstrate that the proposed search terms will produce large numbers of irrelevant documents, the Motion for Entry of ESI Protocol is **GRANTED in part** at this time. The Court **ADOPTS** the Proposed ESI Protocol with the following modification to the "safety valve" provision, Doc. 96-1, p. 4, ¶ 10, lines 14-17, which shall apply to all ESI searches, not just "IDOC email ESI" searches and trigger a review when a search result yields of over 5,000 documents:

> 10. In the event the ESI search using search terms results in the identification of over 5,000 documents, Defendants' counsel will notify Plaintiff's counsel and will conduct a review of a subset of documents to determine the percentage of relevant documents found by the search terms.

Finally, the Court finds that the Qualified Protective Order Pursuant to HIPAA (Doc. 28) includes the protected health information of non-parties and is satisfied that such information is sufficiently protected from unauthorized disclosure. The Court will, of course, remain open to a motion for reconsideration of this Order.

**IT IS SO ORDERED.**

**DATED: January 15, 2021**

                                                              *s/Stephen P. McGlynn*
                                                           **STEPHEN P. MCGLYNN**
                                                           **United States District Judge**