## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**Victoria Green**, as Administrator for the
Estate of Craigory Green,

      Plaintiff,

      v.

**Steve Meeks, et al.,**

      Defendants.

No. 3:20-cv-00463-SPM

Hon. Stephen P. McGlynn,
District Judge

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTIONS TO RECONSIDER

Plaintiff, Victoria Green, hereby respectfully submits the following consolidated response to the Motions to Reconsider filed by the IDOC Defendants (Dkt. 128) and the Wexford Defendants (Dkt. 127), stating as follows:

## INTRODUCTION

Defendants have asked this Court to reconsider its January 15, 2021 ruling on an ESI protocol for this case. But the parties have already reached agreement on all of the issues raised in Defendants' motions, and accordingly, Defendants have obtained the relief they seek from this Court through agreements between the parties during meet-and-confer conferences that the parties have held regarding ESI. This Court should deny Defendants' motion for reconsider and permit the parties to continue conferring about ESI production, providing both sides the opportunity to raise actual disputes with the Court if and when they reach a real impasse.

## BACKGROUND

This section 1983 case concerns Craigory Green, who died while in the custody of the Illinois Department of Corrections (IDOC). Plaintiff has brought a *Monell* claim against

Wexford Health Sources, the private corporation responsible for providing care to individuals incarcerated in the IDOC, and a number of individual medical providers for denying Craigory Green constitutionally adequate medical care. *See* Dkt. 129 at 1-4.

On August 20, 2020, Plaintiff filed a motion for entry of an ESI protocol to guide the discovery and production of electronically stored information in this case. Dkt. 96. Both the Wexford Defendants (including Wexford itself and the defendants employed by Wexford) and the IDOC Defendants (those defendants employed by the IDOC) objected to the ESI protocol, arguing that the search terms would generate too many documents and would generate documents pertaining to the care provided to third parties, which Defendants contended were improper to produce. Dkt. 97; Dkt. 99. The Court granted Plaintiff's motion for entry of the ESI protocol, but modified the safety valve provision that would trigger a sampling process in the event that a search result yielded more than 5,000 documents. Dkt. 122 at 2-3. In reaching its decision, the Court noted that Defendants had not sufficiently supported their argument that the proposed search terms would "produce a large number of irrelevant documents." *Id.* at 2. The Court observed that "the large production of documents, alone, is not an indication that the search terms are too broad or that the information produced from those terms will be unrelated to the case." *Id.* The Court further rejected Defendants' arguments regarding information about other individuals under Defendants' care, noting the relevance of these documents to Plaintiff's *Monell* claim and finding that the qualified protective order in the case, Dkt. 28, sufficiently protected such documents from unauthorized disclosure. *Id.* at 3.

Following the Court's ESI ruling, the parties conducted multiple telephone conferences to collaboratively move forward with ESI production in this case. Dkt. 128 ¶ 17. On February 4, 2021, counsel for the IDOC Defendants provided a "hit list" from the State's Department of

Information and Technology (DoIT)[1] that detailed how many emails each search term had yielded. Ex. 1 (Feb. 4, 2021 Hit List). Based on conversations with counsel for the IDOC Defendants, it appears that the hit list is not de-duplicated—meaning that an email sent to two custodians will be counted twice even though the two emails are identical—and does not contain unique hits—meaning that an email containing two search terms will be counted twice on the hit list.

On February 10, 2021, the parties participated in an ESI call. During that call, the parties discussed the IDOC Defendants' "hit list" and reached agreement about how to proceed regarding ESI email production from the IDOC Defendants. Specifically, the parties agreed that counsel for the IDOC Defendants would review emails with search terms that yielded less than 500 emails, and emails that contained the search term "liver failure," in their entirety and produce responsive documents. Ex. 2 (Feb. 12, 2021 Email re ESI Conference); Ex. 3 (Feb. 12, 2021 Annotated Hit List). The parties further agreed that emails collected through all other search terms would be sampled, with defense counsel reviewing a random 10 percent sample to determine a responsiveness rate. Ex. 2; Ex. 3. Counsel for the IDOC Defendants asked for 60 days to complete the agreed review, and Plaintiff agreed. Ex. 2. The parties also discussed searches of IDOC servers, and counsel for the IDOC Defendants indicated that although their clients did not save documents onto their local hard drives, they did not know whether Defendants had access to and routinely used one or more network drives. Counsel agreed to inquire further and follow up. Plaintiff has not yet heard from Defendants regarding this aspect of the ESI protocol.

---

[1] DoIT is the entity responsible for conducting searches of IDOC email accounts and collecting those emails for production.

During the February 10, 2021 ESI call, counsel for the Wexford Defendants indicated that Wexford had not yet generated a "hit list" and could not provide a date by which such a list would be completed. Counsel indicated, however, that a search for the search term "Green and liver" over both Defendants' emails and network drives had collected more than 80,000 documents (100 GB) altogether, although there might be fewer documents after a de-duplication process. Ex. 2. Plaintiff acknowledged that further discussions and attempts to narrow the search would be required, and asked counsel for the Wexford Defendants whether they preferred to discuss such attempts during the call or instead wait for the full "hit list." Counsel for the Wexford Defendants indicated a preference to wait until a full "hit list" had been generated. Counsel for the Wexford Defendants agreed to keep the parties updated about when a complete "hit list" could be expected. *Id.* As of this filing, Plaintiff has not heard anything further from the Wexford Defendants.

## DISCUSSION

Under Rule 54(b) of the Federal Rules of Civil Procedure, a party may ask a district court to revisit any interlocutory order that does not resolve all claims to all parties.[2] Fed. R. Civ. P. 54(b); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983). Such motions to reconsider are disfavored, and "are granted only in the rarest of circumstances and where there is a compelling reason." *Saccameno v. Ocwen Loan Servicing,* LLC, 2018 WL 1240347, at *2 (N.D. Ill. Mar. 9, 2018); *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911 (N.D. Ill. 2015). A motion to reconsider is proper only where "the Court has misunderstood a

---

[2] In their motions, Defendants discuss the deadline and standard for Rule 59(e) motions to alter or amend a judgment. Although the standard for Rule 59(e) motions is similar to the standard for Rule 54(b) motions, Defendants' motions do not arise under Rule 59(e) because they do not seek reconsideration of a final judgment. *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012) (noting that Rule 59(e) motions "can only follow a judgment"); *Saccameno*, 2018 WL 1240347, at *2 ("It is well-settled . . . that Rule 59(e) motions apply only to final orders.").

4

party, where the Court has made a decision outside the adversarial issues presented to the Court by the parties, where the Court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered." *Bradley v. Hertz Corp.*, 2020 WL 1529530, at *1 (S.D. Ill. Mar. 31, 2020); *see also Barrow v. Wexford Health Sources, Inc.*, 2016 WL 4371627, at *2 (S.D. Ill. June 21, 2016) (same). Reconsideration is not appropriate when a party raises new arguments or evidence that could have been raised before the Court reached its decision. *Hellige v. Wal-Mart, Inc.*, 2020 WL 6149817, at *2 (S.D. Ill. Oct. 20, 2020) (citing *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020)).

In their motion for reconsideration, the IDOC Defendants ask the Court to reconsider the determined amount of sampling that should occur. Dkt. 128 ¶ 5. The Wexford Defendants propose in their motion for reconsideration that the parties confer about further narrowing of the search terms set forth in the ESI protocol. Dkt. 127 at 3-4. But as noted above, there is no dispute about either of these issues. As to the IDOC Defendants' ESI, the parties have reached agreement on which emails should be sampled, and which should be reviewed in their entirety. *See* Ex. B. And Plaintiff agreed to sampling for search terms that yielded well below the 5,000-mark discussed in the Court's ESI Order. For example, the search terms that the IDOC Defendants have highlighted in their motion as justifying a need for sampling are already terms that the parties have agreed will be sampled at just 10% of the total. Ex. 3. Accordingly, the IDOC Defendants are *not* being asked to review 1,095 emails that contain the terms "utilization management and schedul*" but are instead being asked only to review 109 of those emails (randomly selected) for a responsive rate so that the parties can have an informed discussion about whether fulsome review of those emails are proportional to the needs of the case. In other words, the IDOC Defendants have already achieved the relief they seek in their motion through

discussions among counsel. Plaintiff is optimistic that these discussions will continue to yield agreements between the parties to conduct and complete ESI discovery in this case.

The Wexford Defendants have also achieved the relief they seek in their motion—that the parties confer about the terms further before review of the Wexford Defendants' ESI begins— through agreements between the parties. Indeed, Plaintiff openly acknowledged that further discussions would be necessary during the February 10 ESI conference, and is waiting to begin those discussions once a full "hit list" is generated based on the expressed preference of defense counsel. *See* Ex. 2. Because Wexford's "hit list" contains documents from both Defendants' emails and Wexford's servers, Plaintiff's counsel will likely suggest separating those to identify which source might be driving the high number of results. Additionally or alternatively, Plaintiff might raise the possibility of conducting an automated de-duplication process for documents collected from Wexford's servers, as servers often contain several copies of the same document. Another option might be to inquire with Wexford about non-responsive forms or other commonly used documents containing these search terms that could be targeted for exclusion to reduce the number of documents collected. Such proposals, and discussions about their feasibility, are precisely why courts routinely require certification that the parties have reached impasse before filing discovery motions.

The Wexford Defendants also asks this Court to impose a rule that it should not be required to conduct *any* review of documents (sampled or otherwise) until the total number of documents collected for each term is less than 5,000. Dkt. 127 at 4. In support of their request, the Wexford Defendants do not provide the Court with any new information about the responsive rate of any portion of any documents collected by Plaintiff's search terms. They instead simply re-assert their argument that documents related to other inmates are irrelevant to this litigation.

As this Court noted, however, information pertaining to other prisoners under Defendants' care *is* relevant to Plaintiff's claims in this case, and the number of documents collected by the search terms in isolation—without knowing, for example, how many of those documents are simply duplicates of one another, or how many documents are relevant or responsive to Plaintiff's discovery requests—does not establish that the protocol itself is unduly burdensome. *See* Dkt. 122 at 2-3; *see also Eastman v. Santos*, 2020 WL 207043, at *1 (S.D. Ill. Jan. 14, 2020) ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion."). The Wexford Defendants' request to set an arbitrary 5,000-document limit is unsupported and inappropriate, especially given that the parties agree further narrowing is required before the Wexford Defendants should begin reviewing any number of Wexford documents collected by the search terms.

In sum, the Defendants ask this Court to weigh in on issues that are not in dispute. Disputes regarding ESI production in this case may arise, and the Court may be called upon by one or more parties to resolve the appropriate scope of production in this case. But until that time, this Court should deny the motions for reconsideration and permit the parties to continue conferring and working to find agreement.

Respectfully submitted,

/s/ Sarah Grady
Sarah Grady
Attorney for Plaintiff

Jon Loevy
Arthur Loevy
Sarah Grady
Steve Weil
John Hazinski
Loevy & Loevy
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900
hazinski@loevy.com

8

**CERTIFICATE OF SERVICE**

I, Sarah Grady, an attorney, hereby certify that on March 2, 2021, I caused the foregoing to be filed using the Court's electronic filing system, thereby effectuating service on all counsel of record.

/s/ Sarah Grady
Sarah Grady
Attorney for Plaintiff