IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

VICTORIA GREEN, *as Administrator of the Estate of Craigory Green,*

Plaintiff,

v.

STEVE MEEKS, MOHAMMED SIDDIQUI, GAIL WALLS, JOHN SHEPHERD, MICHAEL MOLDENHAUER, VIPIN SHAH, ERIN MEARS-ATTIG, RASHIDA POLLION, MARY ZIMMER, BARBARA WINTER, WEXFORD HEALTH SOURCES, INC., and UNKNOWN WEXFORD DOCTOR,

Defendants.

Case No. 20-cv-00463-SPM

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a Motion for Judgment on the Pleadings filed by Defendants Shepherd, Pollion, and Winter. (Doc. 121). Plaintiff Victoria Green, as Administrator of the Estate of Craigory Green, filed a response to the motion, and Defendants filed a reply brief.[1] (Docs. 129, 131). For the following reasons, the motion is granted.

## BACKGROUND

In the Third Amended Complaint,[2] Plaintiff alleges that during the summer of 2010, while at Cook County Jail, Craigory Green had his gallbladder removed at John H. Stroger Jr. Hospital ("Stroger"). (Doc. 90). In the months following surgery, Green's test showed elevated levels for certain enzymes. A biopsy of his liver was performed in 2011, and Green was diagnosed with

---

[1] Defendants state that in her response, Plaintiff misstates important allegations from the Third Amended Complaint creating exceptional circumstances and necessitating a reply brief. (Doc. 131) (citing SDIL-LR 7.1(c)).
[2] For the purpose of Defendants' motion, the Court accepts as true the following facts as pled in the Third Amended Complaint. (Doc. 90). *See St. John v. Cach, LLC*, 822 F. 3d 388, 389 (7th Cir. 2016).

possible primary sclerosing cholangitis ("PSC"), a rare disease that causes inflammation and scarring in the bile ducts within the liver. The disease usually progresses slowly but will eventually result in death, as the obstructed bile ducts ultimately cause the liver to fail. The only treatment is a liver transplant, and typically, a patient's liver is closely monitored through liver function tests in order to determine when and what priority a patient has on the transplant list. Following the biopsy, doctors prescribed Ursodiol and recommended that Green's PSC diagnosis be confirmed through further tests of his liver function.

Green was taken into the custody of the Illinois Department of Corrections ("IDOC") on September 14, 2012, and transferred to Stateville Northern Reception Center ("NRC"). At NRC, Green was seen by a nurse, who reviewed his medical records from Stroger and noted that Green had undergone a liver biopsy in 2011 and that he had elevated liver function test results. The nurse referred him for an urgent physical examination by a doctor. Green did not see a doctor until September 27, 2012. That same day he was transferred to Menard Correctional Center ("Menard"). During his time at Menard, Defendants disregarded Green's medical records and other serious signs of his liver problems for several years, failing to provide the evaluations and treatment necessary to manage the disease. Green was seen by Defendants Dr. John Shepherd on October 26, 2012, Nurse Barbara Winter on March 16, 2015, and Nurse Practitioner Rashida Pollion on May 24, 2015.[3]

By April 2018, Defendants were aware that Green had PSC and knew that a liver transplant was the only treatment that would save his life. Despite that knowledge, Defendants refused to provide him timely treatment, authorizing a liver transplant only when it was far too late. Green died at Loyola University Medical Center from PSC on October 28, 2018.

---

[3] As the dispositive motion was filed by Defendants Shepherd, Winter, and Pollion, the Court will only address the allegations regarding treatment asserted against these three individual defendants.

# ARGUMENTS

Defendants Dr. Shepherd, Nurse Practitioner Pollion, and Nurse Winter argue that Plaintiff's claims against them are barred by the two year statute of limitations and should be dismissed. (Doc. 121). They contend that where there is a continuing violation, the statute of limitations begins to accrue when a person loses the ability "to do something about [the plaintiff's] condition." (*Id.* at p. 6) (quoting *Heard v. Elyea,* 525 F. App'x 510, 511 (7th Cir. 2013)). Therefore, Plaintiff's claims against them accrued on the day after they retired from their employment with Wexford Health Sources, Inc. ("Wexford"). As stated in their answers to the amended complaint,

> Dr. Shepherd retired from Wexford on March 10, 2013—therefore, Plaintiff's claim against him accrued on March 11, 2013. Ms. Winter retired from Wexford on July 1, 2016—therefore, Plaintiff's claim against her accrued on July 2, 2016. Ms. Pollion retired from Wexford on May 1, 2015—therefore, Plaintiff's claim against her accrued on May 2, 2015.

(*Id.* at p. 6). Because the two year statute of limitations for claims against the Defendants expired before Plaintiff filed suit on October 28, 2019, her claims against them are barred.

In response, Plaintiff argues that Defendants cannot meet the heavy burden required to show that her claims are time barred on the face of the pleadings. (Doc. 129). First, she asserts that under the discovery rule the claims did not accrue until Craigory Green first learned that Defendants were deliberately indifferent to his serious medical needs and became aware of the causal connection between their inadequate medical treatment and his injury. Plaintiff argues that this occurred in 2018, when the need for a liver transplant put Green on notice that his constitutional rights were being violated, causing him grave injury, through a long pattern of deficient medical care, including the inadequate care provided by Defendants Shepherd, Pollion, and Winter in 2012 and 2015. She puts forth that at no time before 2018 was Green reasonably able to know that Defendants' medical care had been deficient and caused serious medical consequences, including his hospitalization, his massive organ failure, and ultimately his death.

Second, Plaintiff argues that her claims are timely because they allege continuing violations of Green's constitutional rights that persisted until he died in 2018. The fact that Defendants left their positions at Menard before Green's death does not undermine this conclusion and, at most, raises factual question about the Defendants' ability to affect the course of Green's care that cannot be resolved on the pleadings alone.

Finally, Plaintiff argues she is entitled to equitable tolling. Despite exercising due diligence, Green was deprived of the opportunity to bring his claims against Defendants Shepherd, Pollion, and Winter until well after he encountered them. Defendants withheld critical information regarding the severity of his illness and the deficiency of the care they had provided. Because a ruling on the motion requires facts outside the pleadings, Plaintiff states it is too early in the litigation to dismiss claims as untimely.

## ANALYSIS

Federal Rule of Civil Procedure 12(c) permits a motion for judgment on the pleadings "after the pleadings are closed – but early enough not to delay trial...." FED. R. CIV. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as motion to dismiss for failure to state a claim filed pursuant to Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). That is, the facts are viewed in the light most favorable to the nonmoving party, and the motion will be granted "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (quoting *N. Ind. Gun and Outdoor Shows, Inc. v. City of South Bend,* 163 F. 3d 449, 452 (7th Cir. 1998)). The moving party must demonstrate that there are no material issues of fact to be resolved. *Moss v. Martin,* 473 F.3d 694, 698 (7th Cir. 2007). In ruling on a Rule 12(c) motion, however, the Court not only considers the complaint, but also other pleadings such as "the answer, and any written instruments attached as exhibits." *Hous.*

*Auth. Risk Retention Group, Inc. v. Chi. Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004) (citations omitted).

Claims brought pursuant to Section 1983 borrow the statute of limitations from the state in which the alleged violation occurred. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Ashafa v. City of Chi.*, 146 F.3d 459, 461 (7th Cir. 1998). Illinois has a two year statute of limitations for personal injury claims. *See* 735 ILCS 5/13-202. Thus, the applicable statute of limitations for Section 1983 claims arising in Illinois is two years. *See Woods v. Ill. Dep't of Children and Family Servs.*, 710 F.3d 762, 766 (7th Cir. 2013).

While state law determines the length of the statute of limitations, federal law determines when the cause of action accrues. *See Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016). The Seventh Circuit has held that a Section 1983 deliberate indifference medical injury claim accrues when the plaintiff knows of his physical injury and its cause. *See Devbrow v. Kalu,* 705 F.3d 765, 768 (7th Cir. 2013). Where the claim alleges a continuing violation regarding a refusal to treat a condition, the statute of limitations begins to accrue when treatment is provided or the inmate is released. *See Heard v. Sheahan*, 253 F.3d 316, 318-319 (7th Cir. 2001). However, this only holds to the extent that the defendants have "the power to do something about [the inmate's] condition." *Id.* at 318. The Seventh Circuit has instructed that "if a defendant leaves the institution altogether, his involvement in the alleged wrong is over. The date of the defendant's departure thus marks the last possible time when the claim might have accrued." *Wilson v. Wexford Health Sources, Inc.,* 932 F. 3d 513, 518 (7th Cir. 2019) (ruling that a constitutional claim for the ongoing denial of medical care of a hernia accrued against the defendant doctor when the doctor resigned from the facility) (citing *Heard v. Elyea,* 525 F. App'x 510 (7th Cir. 2013)).

Here, the "injuries about which [Green] is complaining in this case are the consequence of a numerous and continuous series of events." *Heard v. Sheahan,* 253 F. 3d at 319. Green alleges

he received inadequate care for his PSC since his arrival into IDOC custody in 2012 until his death in 2018. (*See* Doc. 90, p. 11). Thus, regardless of when Green discovered his injury, the statute of limitations accrued upon his death when his constitutional rights were last violated. *See Devbrow,* 705 F. 3d at 769-70 (discussing the "continuing violation" doctrine); *McMurtry v. Wexford Health Sources, Inc.,* No. 18-cv-02176, 2021 WL 1165102, at *7 (N.D. Ill. Mar. 25, 2021) ("[t]he lack of care after discovery of the injury constituted a continuing violation that delayed the start of the statute of limitations").

Although Plaintiff alleges a continuous violation, because Shepherd, Pollion, and Winter all left Wexford employment prior to Green's untimely death, their departure date "marks the last possible time when the claim might have accrued" as to them. *Wilson v. Wexford,* 932 F. 3d at 517. Defendants' answers to the Third Amended Complaint provide that Dr. Shepherd retired on March 10, 2013 (Doc. 103, p. 5), Pollion retired on May 1, 2015 (Doc. 104, p. 6), and Winter retired on July 1, 2016 (Doc. 106, p. 7). Therefore, the two year statute of limitations expired as to these Defendants prior to Plaintiff filing the initial Complaint on October 28, 2019.

The Court finds that Plaintiff's argument that a question of fact still exists regarding Defendants' ability to influence Green's medical treatment after their termination from employment at Menard is without merit. As the Seventh Circuit has stated, Section 1983 "[l]iability is defendant-specific." "An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation…A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary." *Colbert v. City of Chic.*, 851 F.3d 649, 657 (7th Cir. 2017) (quoting *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir. 1983)). Defendants "cannot be held liable for actions others took or failed to take when [they were] no longer employed [by Wexford]." *Beatty v. Person,* No. 17-cv-02149-TWP-TAB, 2019 WL 1282041, at *9 (S.D. Ind. Mar. 20, 2019) (citing *Heard v. Sheahan* and

*Heard v. Elyea*). While the Court is required to make reasonable inferences in Plaintiff's favor from the facts alleged, based on the pleadings, it is unreasonable to infer that Defendants Shepherd, Pollion, and Winter retained any ability "to do something about [Green's] condition" once they left Wexford employment. *Heard v. Elyea*, 525 F. App'x at 511–12 (quoting *Heard v. Sheahan,* 253 F.3d at 318).

The Court must also address Plaintiff's argument that the statute of limitations as to Defendants Shepherd, Pollion, and Winter should be equitably tolled. In the Third Amended Complaint, it is alleged that in September 2018, Green told a hospital social worker that he was upset because Defendants had not informed him of the dire nature of his health. (Doc. 90, p. 18). Plaintiff argues that this fact alone indicates that critical information about the seriousness of Green's condition was withheld from him while he was depending on the medical expertise of Menard staff to provide treatment. She states that further discovery into the facts is required to determine if Green exercised due diligence or whether he was unable to obtain key information like the identity of the Defendants once he knew that he had suffered a constitutional injury.

The doctrine of equitable tolling "permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before, even though the defendant took no active steps to prevent him from suing." *Savory v. Lyons,* 469 F. 3d 667, 673 (7th Cir. 2006) (citing *Donald v. Cook Cty. Sheriff's Dep't,* 95 F. 3d 548, 561 (7th Cir. 1996)). When invoking the doctrine of equitable tolling, the plaintiff bears the burden of establishing two elements"(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Equitable tolling is reserved for "[e]xtraordinary circumstances far beyond the litigant's control [that] ... prevented timely filing," and thus is rarely appropriate. *United States v. Marcell*o, 212 F.3d 1005, 1010 (7th Cir. 2000). *See also Modrowski v. Mote*, 322 F. 3d 965, 967 (7th Cir. 2003).

As Plaintiff asserts, she "is not required to negate an affirmative defense, such as the statute of limitations, in [the] complaint." *Clark v. City of Braidwood,* 318 F. 3d 764, 767 (7th Cir. 2003). However, dismissal is warranted when the allegations in the pleadings "show a claim to be time-barred and provide no inkling that there may be a basis to toll the limitations period." *I.B. of T. Union Local No. 710 Pension Fund v. Flynn,* No. 17-cv-05532, 2019 WL 1281991, at *4 (N.D. Ill. Mar. 20, 2019) (citing *Logan v. Wilkins,* 644 F. 3d 577, 582-83 (7th Cir. 2011)). Here, the amended complaint does not specify or imply that Green acted reasonably, and diligently pursued his claims against Defendants Shepherd, Pollion, and Winter. There is also nothing in the amended complaint indicating exceptional circumstances or that Green was for some reason "unable to obtain vital information bearing on the existence of his claim." *Mitchell v. Donchin,* 286 F. 3d 447, 451 (7th Cir. 2002) (quoting *Shropshear v. Corp. Counsel of City of Chi.,* 275 F. 3d 593, 595 (7th Cir. 2001)). In the response, Plaintiff also does not address Green's efforts to obtain the identities of Defendants or evidence, neither does she present any extraordinary circumstances that prevented Green from filing suit earlier. Rather, she argues that because the seriousness of his condition was withheld from him by Defendants, an equitable tolling argument is not foreclosed and requires further discovery. Even if further discovery proves Defendants did not inform Green of the "dire nature of his health," this fact does not establish an equitable tolling defense to the statute of limitations claim. *See Gieringer v. Silverman,* 731 F. 2d 1272, 1278 (7th Cir. 1984) (noting that "plaintiffs fundamentally misconstrue" the doctrine of equitable tolling by asserting that discovery was needed to demonstrate some fraudulent action by the defendant); *Cada v. Baxter Healthcare Corp.,* 920 F. 2d 446, 452 (7th Cir. 1990) (equitable tolling "does not require any conduct by the defendant."). Because a "bare allegation [of equitable tolling], without more, will not save the claim," Plaintiff's argument of equitable tolling fails. *Logan,* 644 F. 3d at 582. Accordingly, the claims against Defendants Shepherd, Pollion, and Winter are time barred by the

statute of limitations.

DISPOSITION

For the reasons stated above, the Court **GRANTS** the Motion for Judgment on the Pleadings (Doc. 121). The Court **DISMISSES with prejudice** all claims against Defendants Shepherd, Pollion, and Winter. The Clerk of Court is **DIRECTED** terminate them as defendants and to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**

**DATED:   June 29, 2021**

                                                              *s/Stephen P. McGlynn*
                                                              **STEPHEN P. MCGLYNN**
                                                              **United States District Judge**