IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **Victoria Green**, as Administrator for the Estate of Craigory Green, | Case No. 20-cv-00463 |
| | Hon. Nancy J. Rosenstengel, District Judge |
| Plaintiff, | |
| v. | |
| **Steve Meeks, et al.,** | Jury Trial Demanded |
| Defendants. | |

### PLAINTIFF'S MOTION TO COMPEL
### DEFENDANT WEXFORD TO PRODUCE DOCUMENTS

Plaintiff Victoria Green, as Administrator for the Estate of Craigory Green, by her attorneys, pursuant to Rule 37(a) of the Federal Rules of Civil Procedure and Local Rule 7.1, respectfully submits the following Memorandum of Law in support of her Motion to Compel Defendant Wexford to Produce Documents.

Wexford has provided Plaintiff with a privilege log claiming privilege over the mortality review worksheet pertaining to Craigory's death, as well as the email transmitting the worksheet to Wexford staff. Wexford claims, inaccurately, that these documents are subject to Illinois's peer-review privilege and the federal work product privilege.

Wexford's invocation of the Illinois peer-review privilege fails on its face because state law does not create privileges governing federal litigation in federal court. And this Court should not invent a new peer-review privilege under federal law to protect the relevant documents that Wexford has refused to disclose. Doing so

would conflict with Supreme Court and Seventh Circuit precedents, as well as the near unanimous holdings of district courts across the country that have considered this question. Furthermore, these documents are not work product as they were not created in anticipation of litigation. The mortality review documents should be handed over to Plaintiff immediately and it is improper for Wexford to refuse to do so.

Plaintiff requests that the Court find that Wexford's claims of peer-review privilege and work product privilege are not valid and grant Plaintiff's motion to compel Wexford's production of these documents.

## Background

This lawsuit concerns the death of Craigory Green while in Illinois Department of Corrections ("IDOC") custody on October 28, 2018, after his medical providers failed to adequately monitor and treat his known serious liver disease, delaying the approval of transplant procedures until it was too late. Dkt. No. 90, ¶¶ 1-4. Plaintiff alleges that Wexford was responsible for Craigory's death by virtue of its policies, practices, and procedures regarding the provision of medical care to prisoners in IDOC custody. *Id.* ¶ 103. Plaintiff alleges that Dr. Siddiqui, the author of the mortality review worksheet and Craigory's physician at Menard Correctional Center, was an employee of and final policymaker for Wexford. *Id.* ¶ 10.

The claims against Wexford include (1) denial of medical care (Eighth Amendment); (2) conspiracy; (3) failure to intervene (Eighth Amendment); (4)

wrongful death; and (5) survival.[1]  *Id.* ¶¶ 96-138.  Plaintiff's § 1983 *Monell* claim against Wexford alleges that Wexford was aware of widespread practices whereby healthcare personnel (1) commonly fail to respond to follow up on complaints by prisoners about their health status; (2) fail to review relevant medical records as part of a patient's treatment plan; (3) fail to create a sensible treatment plan for patients whose health status require the creation of a treatment plan; (4) fail to schedule follow-up appointments deemed appropriate by members of the medical staff; (5) fail to take action to secure continuity of care among correctional facilities within the IDOC and other healthcare providers; and (6) fail to arrange for prisoners to be treated in outside facilities, even when an outside referral is necessary or proper. *Id.* ¶ 105.  In addition, Plaintiff alleges that Wexford had a policy of failing to maintain adequate levels of healthcare staffing. *Id.*

Wexford has provided Plaintiff with a privilege log that claims two privileges over (1) a mortality review worksheet regarding Craigory's death dated October 29, 2018, authored by Defendant Mohammed Siddiqui, M.D., and (2) the email transmitting the worksheet dated October 30, 2018, sent by Wexford Regional Medical Director Roderick Matticks, M.D., to seven Wexford employees (the "mortality review documents"). Ex. A.  First, Wexford claims the mortality review documents are subject to Illinois's peer-review privilege, the Illinois Medical Studies Act, 735 ILCS 5/8-2101, et seq. ("the Act").  Second, Wexford claims the documents are subject to the federal work product privilege, Federal Rule of Civil Procedure

---

[1] Plaintiff has also raised a *respondeat superior* claim against Wexford under state law.

3

26(b)(3). In the privilege log, Wexford describes the mortality review worksheet and transmittal email as a "[c]onfidential memorandum used in the course of internal quality control for the purpose of reducing morbidity or mortality" and an "[e]mail conveying the Mortality Review Worksheet confidentially to legal staff and other staff involved in quality control within Wexford", respectively. Ex. A.

Plaintiff and Wexford have met and conferred and have engaged in written correspondence in an effort to resolve this discovery dispute, but to no avail. Plaintiff now brings this motion to compel the production of the mortality review documents.

## Argument

Rule 26(b) of the Federal Rules of Civil Procedure provides that a plaintiff is entitled to discovery regarding any nonprivileged matter that is relevant to her claims and proportional to the needs of the case. Fed. R. Civ. P. 26(b). Wexford has the burden to establish the existence and applicability of any privilege it is asserting. *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000). For the reasons below, Wexford has failed to meet this burden for either the Illinois peer-review privilege or the work product privilege.

**A. There Is No Federal Privilege That Protects Wexford's Documents**

Wexford has not claimed any federal peer-review privilege in their privilege log – only a peer-review privilege under Illinois law. Ex. A. But federal law (not state law) governs privilege claims in federal-question cases such as this one. *See* Fed. R. Evid. 501 (federal common law governs except where the United States Constitution, federal statute, or Supreme Court rules provide otherwise); *Univ. of Penn. v. EEOC*, 493 U.S. 182, 188 (1990). There is no question, or dispute, that Plaintiff's case is

4

unquestionably one that arises under federal law. Therefore, state-law privileges do not apply. *Hamdan v. Ind. Univ. Health N. Hosp., Inc.*, 880 F.3d 416, 421 (7th Cir. 2018) ("[F]ederal courts apply the federal common law of evidentiary privileges—not state-granted privileges—to claims . . . that arise under federal law."). This remains true even if a complaint states a pendent state law claim. *Mem'l Hosp. for McHenry Cty. v. Shadur*, 664 F.2d 1058, 1061, n.3 (7th Cir. 1981).

The Supreme Court has determined that a peer-review privilege does not exist in litigation over federal civil rights. In *University of Pennsylvania*, the Supreme Court refused to recognize a peer-review privilege that was nearly identical to the state-law privilege that Wexford asserts here. 493 U.S. at 189-90. The Court recognized that confidentiality is "important to the proper functioning of [a] peer review process" in any institution, and nevertheless held that rooting out violations of federal law outweighed any interest in maintaining confidentiality of the peer-review process. *Id.* at 193; see also *id.* ("Indeed, if there is a 'smoking gun' to be found . . . it is likely to be tucked away in peer review files.").

In fact, even before *University of Pennsylvania*, the Seventh Circuit expressly declined to recognize any privilege under the Illinois's Medical Studies Act in a federal-question case. *Shadur*, 664 F.2d at 1062-63. In reaching this conclusion, the Seventh Circuit distinguished between medical malpractice cases, where what happened during the review proceeding has no relevance, and cases (like this one) where what happened during the review proceeding is important. *Id.* at 1062. And, as in *University of Pennsylvania*, the court found that the public interest in enforcing

5

federal claims outweighed the interest in maintaining confidentiality of a peer-review process. *Id.* at 1063.  The Seventh Circuit articulated this rule even more broadly in *Hamdan*: "This court has declined to recognize a federal peer-review privilege, reasoning that the need for truth outweighs the state's interest in supplying the privilege." 880 F.3d at 421.  Of course, the Seventh Circuit's holding in *Hamdan* is binding on this Court.

*Hamdan*'s holding is also in line with every other appellate court that has considered this issue. *See Bost v. Wexford Health Sources, Inc.*, 2017 WL 3084953, at *4 (D. Md. June 19, 2017) ("Every circuit court that has addressed the issue of a federal medical peer review privilege has flatly rejected the assertion.").[2]  And, "nearly every United States district court that has addressed the issue in the context of section 1983 litigation brought on behalf of jail or prison inmates has rejected the assertion of privilege." *Jenkins v. DeKalb County*, 242 F.R.D. 652, 659 (N.D. Ga. 2007).[3]  In fact, at least one court in this District previously rejected Wexford's own

---

[2] For instance, the Ninth Circuit has rejected the privilege in section 1983 cases like this one involving claims against a correctional healthcare provider. *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005).  And the Fourth and Eleventh Circuits have rejected the privilege in section 1985 claims for discrimination. *Adkins v. Christie*, 488 F.3d 1324, 1326-30 (11th Cir. 2007); *Virmani v. Novant Health Inc.*, 259 F.3d 284, 289-93 (4th Cir. 2001); *see also Pearson v. Miller*, 211 F.3d 57, 67 (3d Cir. 2000) (although comity is a concern in determining whether to recognize a state-law privilege, "[t]he appropriateness of deference to a state's law of privilege is diminished . . . in cases in which a defendant state actor [is] alleged to have violated citizens' federal rights"); *ACLU v. Finch*, 638 F.2d 1336, 1343-44 (5th Cir. 1981) (recognizing the strong interest in vindicating constitutional rights under section 1983, as compared the weaker interest in comity).

[3] *See also, e.g., Ramey v. Salazar*, 2018 WL 703431, at *3 (W.D. Tex. Feb. 2, 2018); *Bost*, 2017 WL 3084953, at *4-5; *Dunn*, 163 F. Supp. 3d at 1211; *Johnson v. Cook Cnty.*, 2015 WL 5144365, at *3–5 (N.D. Ill. Aug. 31, 2015); *McLaughlin v. Tilden*,

invocation of the Illinois Medical Studies Act in a case involving the death of a prisoner. *Miller v. Hodge, et al.*, No. 14 C 1071, Dkt. 90 (S.D. Ill. May 8, 2015). Ex. B.

In reaching these conclusions, most of these courts have performed a careful review of the justifications for recognizing a peer-review privilege and determined that the need for discovery in section 1983 cases involving denials of medical care outweighed the policy interests advanced by the states in creating these state-law privileges. *E.g., Dunn*, 163 F. Supp. 3d at 1206–08; *Johnson*, 2015 WL 5144365, at *5. In addition, courts have recognized that Congress has repeatedly considered and refused to recognize this privilege under federal law, which strongly indicates that Congress did not intend a peer-review privilege to be recognized as a matter of federal law. *E.g., Agster*, 422 F.3d at 839.

In Plaintiff's case, the balance of these interests is similarly in favor of allowing Plaintiff the discovery. A report made "in the course of internal quality control" (to use Wexford's own language in its privilege log) and in response to Craigory's death is crucial discovery in this case, which not only concerns claims related to Craigory individually, but also a *Monell* claim concerning Wexford policy, practices, and procedures. Dkt. 90, ¶ 103. Repeatedly, courts have permitted precisely the discovery Plaintiffs seek here for *Monell* discovery. *See, e.g., Awalt v. Marketti*, No. 11-cv-6142,

---

2015 WL 888921, at *2 (C.D. Ill. Feb. 27, 2015); *Grabow v. Cnty. of Macomb*, 2013 WL 3354505, at *9 (E.D. Mich. July 3, 2013); *Williams v. Univ. Med. Ctr. of S. Nevada*, 760 F. Supp. 2d 1026, 1031 (D. Nev. 2010); *Estate of Belbachir v. Cnty. of McHenry*, 2007 WL 2128341, at *6 (N.D. Ill. July 25, 2007); *Lewis v. Cnty. of Henry*, 2006 WL 1843336, at *2 (S.D. Ind. June 29, 2006); *Weiss v. Cnty. of Chester*, 231 F.R.D. 202, 207 (E.D. Pa. 2005); *Atteberry v. Long United Hosp.*, 221 F.R.D. 644, 648 (D. Colo. 2004); *Leon v. County of San Diego*, 202 F.R.D. 631, 637 (S.D. Ca. 2001).

7

2012 WL 6568242, at *3- 5 (N.D. Ill. Dec. 17, 2012) (requiring defendants to comply with request to produce documents all complaints regarding the denial of medical care and inmate files of any jail detainee who had medical issues at a jail over a five year period—which totaled 1,000 medical files—finding those requests were relevant and proportional to Plaintiffs' *Monell* claims); *DeLeon v. Guevara*, Case No. 18-cv-1028, 2019 WL 4278043 (N.D. Ill. Sept. 10, 2019) (collecting cases).

In sum, Wexford cannot withhold documents based on Illinois state law where, as here, Plaintiff's case involves federal claims. And the Seventh Circuit, in chorus with trial and appellate courts from across the country, has flatly rejected the argument that courts may recognize a federal peer-review privilege. Accordingly, this Court should order production of the mortality review documents.

**B. Even If It Applied In This Case, Illinois's Peer-Review Privilege Does Not Protect Wexford's Documents**

Even if this Court found that the Act applies in this case, Defendant's privilege log documents would not be protected by the peer-review privilege. By its terms, it is entirely unclear whether correctional healthcare companies contracting with prisons (and not a healthcare delivery facility) are even within the purview of the Act. 735 ILCS 5/8-2101; *see also Pietro v. Marriott Senior Living Services, Inc.*, 810 N.E.2d 217, 223 (Ill. App. Ct. 2004) ("[T]he statute does not protect data of 'other health care delivery entities or facilities.' Rather, it protects data of 'medical organizations under contract with . . . other health care delivery entities or facility.'"). Here, Wexford is not under contract with a healthcare facility – it is under contract with a correctional

8

facility. For this reason, even if it applied in this case, the Act would offer no protection to Wexford whatsoever.

## C. Wexford's Documents Do Not Constitute Work Product

Wexford's work product assertion fares no better than its claim of state law privilege. Wexford's contract with the IDOC *requires* Wexford to create the mortality review documents currently being withheld. Wexford admits as such within the privilege log itself, describing the mortality review documents as created for the purpose on "internal quality control." Ex. A. These are documents created in the usual course of business at Wexford as part of "quality control" and cannot be work product, as the work product privilege only protects those documents created in anticipation of litigation. *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010) ("The work-product doctrine protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case."). There is simply no basis for Wexford to assert that these documents were created in anticipation of litigation, rather than as part of Wexford's routine and contractually required operations. Wexford claiming these documents are work product does, however, provide interesting insight into what Wexford considers to be the purpose of these documents.

## Conclusion

Plaintiff respectfully requests that the Court grant her motion to compel Defendant Wexford to produce the documents identified in their privilege log.

Dated: March 11, 2022	Respectfully submitted,

	/s/ Alison Bitterly
	*Attorney for Plaintiff Victoria Green*

## CERTIFICATE OF SERVICE

      I, Alison Bitterly, an attorney, hereby certify that on March 11, 2022, I caused the foregoing Plaintiff's Motion to Compel Defendant Wexford to Produce Documents to be filed using the Court's electronic filing system, thereby effectuating service on all counsel of record.

      I further certify that I am concurrently serving a copy of the foregoing to Defendant Wexford's counsel via email.

      /s/ Alison Bitterly
      *Attorney for Plaintiff Victoria Green*