IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **Victoria Green**, as Administrator for the Estate of Craigory Green,<br><br>Plaintiff,<br><br>v.<br><br>**Steve Meeks, et al.**,<br><br>Defendants. | Case No. 3:20-cv-463-SPM<br><br>Hon. Stephen P. McGlynn, District Judge |

### PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Pursuant to Federal Rule of Civil Procedure Rule 37 & Local Rule 7.1, Plaintiff Victoria Green, by her attorneys, submits this motion to compel. In support of her motion Plaintiff states:

### BACKGROUND

This case arises from the death of Craigory Green. Mr. Green was imprisoned by the Illinois Department of Corrections ("IDOC"). He died of a rare liver condition. Plaintiff alleges that Mr. Green died because the defendants, on whom Mr. Green had to rely for his medical care, failed to monitor and treat the liver condition, and delayed approving the liver transplant Mr. Green needed until it was too late to save him.

Plaintiff has asserted claims against Wexford Health Sources, Inc. ("Wexford"), the private vendor to which the IDOC has outsourced medical care for its prisoners. Plaintiff alleges Wexford has widespread policies, practices, and procedures that cause prisoners to receive inadequate medical care and caused Mr. Green to receive inadequate medical care for his liver condition in particular. Plaintiff also asserts that Mr. Green's death was caused by the deliberate indifference of multiple individual IDOC and Wexford employees.

The present motion to compel concerns multiple discovery requests issued by Plaintiff. The parties have met and conferred on several occasions (both by telephone and in written correspondence) regarding each of these requests. Despite Plaintiff's best attempts to resolve these issues, certain disputes remain.[1] The disputes concern Plaintiff's Rule 34 requests for production to the defendants, *see* **Ex. 1** (Plaintiff's First Rule 34 requests) and **Ex. 2** (Plaintiff's second Rule 34 requests) and a portion of her Rule 30(b)(6) deposition notice to Wexford, **Ex. 3** (Plaintiff's deposition notice to Wexford). In summary, the disputes are as follows:

1. **Discipline and evaluation records.** Plaintiff asks the Court to compel production of the individual defendants' discipline and evaluation records (**Ex. 2** ¶¶ 25 & 26).

2. **Punitive damages**. Plaintiff asks the Court to compel the IDOC defendants to produce documents relevant to Plaintiff's claims against them for punitive damages, including documents related to the IDOC defendants' net worth (**Ex. 2** ¶¶ 44 & 45).

3. **Wexford policy manuals.** Plaintiff asks the Court to compel Wexford to produce certain policy manuals in full, rather than Wexford's insistence that Plaintiff identify pages from the manuals for Wexford to produce (**Ex. 2** ¶ 37).

4. **Complaints, grievances, and death documents.** Plaintiff asks the Court to compel Wexford to search for and produce documents reflecting complaints or grievances filed against the individual defendants in this case alleging inadequate medical care, as well as documents indicating deaths at Menard Correctional Center (**Ex. 1** ¶¶ 13-15; **Ex. 2** ¶¶ 29 31-34 & 50).

5. **Reassertion of peer-review privilege and attorney work-product.** Plaintiff seeks to compel evidence Wexford claims is privileged from disclosure under the Illinois peer-review

---

[1] Pursuant to Federal Rule of Civil Procedure 37(a)(1), Plaintiff hereby certifies that she conferred in good faith with counsel for the defendants regarding each of the subjects of the motion to compel, in an effort to obtain the discovery without court action. This included multiple emails between counsel as well as telephonic conferences to discuss the discovery at issue in this motion.

privilege and the attorney work-product doctrine. There is already a pending Rule 37 motion regarding Wexford's claim of a peer-review privilege. *See* ECF 173. Wexford has also claimed the peer-review privilege over **(a)** a topic of testimony in Plaintiff's Rule 30(b)(6) notice to Wexford, *see* **Ex. 3** ¶ 6, and **(b)** multiple additional documents listed in an updated privilege log, **Ex. 4** (Wexford privilege log). Wexford indicates that even if it loses Plaintiff's present motion over Wexford's peer-review privilege claim, it may continue to claim the privilege over this evidence. Additionally, in the privilege log Wexford reasserts attorney work-product privilege over "dual-use" documents that were also created as part of its peer-review process. *See id.* and ECF 173 at 9.

## ARGUMENT

Rule 26(b)(1) provides that a party is entitled to discovery regarding any nonprivileged matter that is relevant to her claims or defenses and proportional to the needs of the case. "Strong public policy considerations favor of the disclosure of relevant materials," *Meridian Sec. Ins. Co. v. Roberts*, No. 19-cv-00884, 2020 WL 9078304, at *1 (S.D. Ill. Mar. 31, 2020), "such that 'before restricting discovery, the court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truth seeking function in the particular case before the court.'" *Id*. (quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002)). "Relevant information," in turn, "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. Under these standards, the disputed discovery that Plaintiff seeks through this motion is appropriate.

1. **Individual defendants' discipline and evaluation documents (Ex. 2 ¶¶ 25 & 26).**

Plaintiff has requested production of individual defendants' personnel files and any other documents relating to their employment with either the IDOC or Wexford (*i.e.*, hiring

3

documents, performance reviews, disciplinary records, training documents, etc.).  **Ex. 2** ¶¶ 25, 26.  Defendants objected. After extensive negotiations, Plaintiff agreed to limit these requests to "training records (to the extent they have not already been produced), disciplinary documents (including both successful and unsuccessful attempts to impose discipline), and documents reflecting evaluations of job performance." **Ex. 6** at 3 (Plaintiff letter to IDOC Defendants). Defendants still refuse to produce any discipline or evaluation materials.

The requested documents are discoverable.  Evaluations of the individual defendants' job performance, instances of discipline for misconduct, and similar documents bear directly on the question of the defendants' deliberate indifference to the violation of Mr. Green's rights that occurred.  These documents also go to Wexford's own deliberate indifference.  Plaintiff has asserted a *Monell* claim against Wexford.  If discipline or evaluation documents demonstrate ongoing failures in patient care, that tends to show Wexford was on notice of these violations, and it lends credence to Plaintiff's argument that Wexford has allowed implemented policies and practices to flourish.  The deliberate indifference question also goes to whether the defendants can be subjected to punitive damages, which Plaintiff seeks in this case.

Courts have repeatedly held that discipline and evaluation documents are relevant in cases like this one.  In *Grayson v. City of Aurora*, No. 13-cv-1705, 2013 WL 6697769 (N.D. Ill. Dec. 19, 2013) for example, the plaintiff sought the police officer defendants' personnel and complaint files.  *Grayson*, 2013 WL 6697769, at *1.  The court granted plaintiff's motion to compel, finding that these personnel files and complaints were relevant to both the *Monell* and individual claims as they might demonstrate deliberate indifference on behalf of both the police department and the individual defendants. *Id.* at *3-6. *Accord Smith v. Portwood*, No. 19-cv-5329, 2021 WL 4318076, at *2 (N.D. Ill. Sept. 23, 2021) (granting plaintiff's motion to compel

4

defendants' disciplinary records and internal investigation records as they may provide evidence related to deliberate indifference).

Aside from contesting relevance, the defendants claim that the personnel files are not discoverable, citing an Illinois administrative law to argue that "[e]mployment files of state employees are presumptively confidential." **Ex. 5** at 5 (IDOC defendants Rule 34 responses). This state-law administrative provision, however, has no bearing on the discoverability of documents in a federal-question case like this one. *See McCroy v. Ill. Dep't of Corrs.*, 2006 WL 8077033, at *2 (C.D. Ill. May 12, 2006). There is a protective order in place in this case to address confidentiality concerns, *see* ECF 28, and any additional concerns about disclosure of sensitive personal information like home addresses can be addressed through redaction, *see* Grayson, 2013 WL 6697769 at *6. Defendants must produce these documents.

2. **Punitive damages documents (Ex. 2 ¶¶ 44 & 45).**

Plaintiff seeks an order compelling the individual IDOC defendants to produce documents related to their net worth (**Ex. 2** ¶¶ 44 and 45). These documents are inarguably relevant to the question of punitive damages against the defendants, *see BMW of North Am., Inc. v. Gore*, 517 U.S. 559, 573-83 (1996) (defendant's wealth relevant to punitive damages), and Plaintiff and the Wexford defendants are working to reach agreement regarding discovery of this material after summary judgment is decided in the case. The IDOC defendants, however, have refused to enter into any such agreement, arguing instead that Illinois's State Employee Indemnification Act, 5 ICLS § 350/0.01 *et seq.*, renders such documents irrelevant because state employees enjoy indemnification from the state. **Ex. 5** ¶¶ 44 & 45.

The Indemnification Act, however, does *not* require the State to indemnify any award that includes a finding of deliberately indifferent conduct, and exempts punitive damages. Section 2(d) of the Act carves out cases where "the court or jury finds that the conduct or

5

inaction which gave rise to the claim or cause of the action was intentional, willful or wanton misconduct and was not intended to serve or benefit interest of the State." 5 ILCS 350/2(d). *See Steidl v. Madigan*, 48 N.E.3d 180, 184 (Ill. Ct. App. 2016) (indemnification not required under § 2(d) where "the acts and omissions upon which the judgment . . . was based were intentional, willful or wanton; no court or jury has found that his acts or omissions were not intentional, willful or wanton; and the Attorney General had not approved the settlement"). The court in *Farris v. Kohlrus*, No. 17-cv-3279, 2019 WL 351876 (C.D. Ill. Jan. 29, 2019) reached this conclusion. In *Farris* the plaintiff had sued IDOC employees and had requested "insurance policies, contracts, or indemnification agreements, [etc.], that could or might provide coverage to any of the defendants for any of the allegations" in the complaint. *Id*. at *8. The IDOC defendant-employees invoked the Indemnification Act, but the court overruled the objection since the Act did not cover punitive damages. *Id.* That rule applies in this case as well.

3. **Wexford policy manuals.**

Plaintiff has requested that Wexford produce certain policy manuals, but Wexford continues to refuse to provide these documents. (By way of compromise Plaintiff has offered to limit this request to three manuals: Wexford's Utilization Management Policies/Guidelines; Wexford' Provider Handbook; and Wexford's Quality Management Program.) Wexford has insisted instead that Plaintiff identify pages from the manuals—sight unseen—for Wexford to produce. Wexford's counsel admitted to Plaintiff's counsel that the basis refusing to produce the policies is not that doing so would be burdensome in any way. Rather, Wexford's basis for withholding them is that parts of the manuals are irrelevant to this case, and that the manuals contain confidential information.

Parties, however, are not permitted to withhold production of parts of a document responsive to a discovery request on grounds that other parts of the document are irrelevant. Wexford, moreover, is insisting that Plaintiff identify relevant portions of these documents without reviewing the document, which means that Plaintiff cannot definitively determine which parts of the manuals are relevant, and which are not. It is simply not the case that the relevance of a policy manual can be determined by reading the manual's table of contents in a vacuum, which is what Wexford insists upon. Sections of different policies are often interdependent, and even seemingly unrelated portions of a manual can shed light on each other by showing, for example, how Wexford allocates its healthcare resources among different conditions. Full manuals may also reveal information about potential defenses like impossibility, to the extent they reflect adequate medical care protocols for other conditions. It is for these and similar reasons courts have found that parties are entitled to full documents in such instances. *See Lowe, et al. v. CVS Pharm., Inc., et al.*, No. 14-cv-3687, 2015 WL 13427768, at *1 (N.D. Ill. Feb. 6, 2015) (granting motion to compel the production of full insurance policies despite defendant's objection that relevant information was produced elsewhere). Finally, Wexford's objection that the manuals contain confidential information is inappropriate, as the parties have an agreed confidentiality order in place in this case. *See* ECF 28. The Court should rule that Wexford is required to immediately produce these policy documents to Plaintiff in full.

4. **Complaints, grievances, & death documents (Ex. 1 ¶¶ 13-15; Ex. 2 29, 31-34, & 50).**

Plaintiff has served a series of document requests for complaints and grievances relating to inadequate healthcare, as well as documents relating to deaths from medical conditions. Defendants have largely refused to search for responsive documents.[2] The defendants have

---

[2] During the parties' meet and confer, Plaintiff's counsel sought to further compromise on complaints and grievance documents, offering to narrow the requests to complaints and grievances against the

refused to search for or produce documents relating to complaints or grievance by prisoners, *see* **Ex. 7**, and instead has limited the search and production to litigation documents filed by IDOC prisoners against Wexford. It has limited its search further to include only litigation relating to requests for liver transplants, and then limited its search even further by excluding other responsive materials, such as liver-related complaints Wexford's treatment of Hepatitis C. These limitations have resulted in the production of just one litigation document.

Wexford claims that Plaintiff's requests are overbroad, and its counsel indicated that Wexford has not attempted to track down information on complaints that involve circumstances other than denial of a liver transplant. But Wexford's failure even to search for documents involving other types of organ transplants or other denials of medical care demonstrates that this dispute is not really about Plaintiff's request being "overboard"—it is about Wexford wanting to withhold basic discovery. Plaintiff's *Monell* allegations are not founded strictly on denials of liver transplants. Rather, Plaintiff alleges that Mr. Green's injuries came about because Wexford was aware of and was indifferent to widespread practices whereby healthcare personnel (1) commonly fail to respond to follow up on complaints by prisoners about their health status; (2) fail to review relevant medical records as part of a patient's treatment plan; (3) fail to create a sensible treatment plan for patients whose health status require the creation of a treatment plan; (4) fail to schedule follow-up appointments deemed appropriate by members of the medical staff; (5) fail to take action to secure continuity of care among correctional facilities within the IDOC and other healthcare providers; and (6) fail to arrange for prisoners to be treated in outside facilities, even when an outside referral is necessary or proper. *Id.* ¶ 105. These are entirely appropriate *Monell* claims, and the discovery Plaintiff seeks precisely the type of information

---

individual Wexford defendants in this case that are otherwise responsive to the requests. Wexford rejected this offer, and instead has limited Wexford's search as described herein.

Plaintiff needs to prove them. *Cf. Awalt v. Marketti*, 74 F. Supp. 3d 909, 939 (N.D. Ill. 2012) (holding evidence of inadequate care of numerous different medical conditions supported a *Monell* claim where inmate died of a seizure, because "Plaintiff does not claim merely that the [defendants] have a policy of specifically denying detainees anti-seizure medication. Rather, Plaintiff argues that the [defendants] are reckless in their medical care of detainees generally, and Awalt's death was caused by this general recklessness."). Meanwhile the burden on Wexford is modest, as Plaintiff has offered to limit the request to the individual defendants.

The same goes for Plaintiff's requests relating to death documents. (**Ex. 1** ¶ 15; **Ex. 2** ¶¶ 32, 33, & 34.) Wexford has searched for only documents relating to *liver* deaths, and then only for a particular type of document—"memoranda" relating to a death. The company has refused to search for any documents relating to deaths other than memoranda, or for documents relating to any condition other than liver disease. These limitations prevent Plaintiff from obtaining relevant discovery. Plaintiff's relevant requests include various other types of documents in addition to memoranda, including death investigations, death certificates and autopsies, medical records, correspondence about deaths, documents reflecting meetings regarding deaths. Given the scope of Plaintiff's *Monell* allegations, Plaintiff requests that this Court compel Wexford to immediately search for and produce these additional death-related documents.

5. **Wexford's assertion of peer review and "dual use" work-product privileges.**

Finally, Plaintiff seeks to compel discovery over Wexford's incorrect assertion of peer-review and attorney work-product privileges. Wexford's assertion of both these privileges is the subject of an existing motion to compel, ECF 173, and Wexford has reasserted the privileges over a new set of discovery.

***Peer-review privilege***.  Wexford has supplemented its privilege log to include numerous new assertions of the Illinois peer review privilege.  *See* **Ex. 4** ¶¶ 1, 2, 6-18.[3]  It has also asserted the peer-review privilege in the context of Wexford's 30(b)(6) deposition.  *See* **Ex. 3** ¶ 6.  During the parties' Rule 37 conference, Plaintiff asked Wexford to agree that the Court's ruling on the outstanding motion to compel (*i.e.*, ECF 173) would resolve its assertion of the peer-review privilege as to this evidence as well.  Wexford refused, arguing that any ruling by the Court would be confined to the "four corners" of Plaintiff's motion—and thus Wexford reserved the right to continue asserting the peer-review privilege even in the face of a ruling by the Court on the existing motion to compel that the privilege did not apply.

Wexford's position misconstrues the scope of the legal issue at stake in Plaintiff's existing motion.  The question presented in that motion is whether a state-law peer-review privilege applies in federal-question Section 1983 cases like this one.  As Plaintiff sets out in her motion, federal courts are essentially uniform in holding that the privilege does not apply.  *See* ECF 173 at 4-8 (collecting cases).  If this Court follows that precedent, its holding will be the law of the case.  And because the question at issue in Plaintiff's motion is whether a state-law peer-review privilege can be applied in a federal-question civil rights case like this one, any ruling will not be confined to the "four corners" of Plaintiff's motion.  It will apply to the entirety of this case.  The only purpose of re-litigating additional assertions of the peer-review privilege would be to delay the resolution of this case.  Thus, if the Court overrules Wexford's assertion of the peer-review privilege with respect to Plaintiff's current motion to compel on grounds that the privilege does not apply in federal question cases like this one, it should hold

---

[3] Plaintiff has annotated the privilege log with red numbers to the right of Wexford's privilege review table.  The "¶" marks refer to those numbers.

that the privilege also does not apply with respect to the peer-review documents and Rule 30(b)(6) testimony at issue in this motion, which Wexford seeks to withhold on the same basis.

***Attorney work-product privilege.*** Wexford additionally asserts the attorney work-product privilege with respect to the same peer review materials. Wexford asserted the attorney work-product privilege over the peer-review materials at issue in Plaintiff's first motion, *see* ECF 173 at 9, but the privilege is unavailable to Wexford for the reasons Plaintiff has explained. *Id.* Specifically, in each of the documents over which Wexford asserts the attorney work-product privilege, it *also* asserts the peer-review privilege. See **Ex. 4** ¶¶ 1, 2, 6-18.

Rule 26(b)(5), however, sets out the parameters of documents that may be withheld from discovery based on an assertion of privilege, and it provides unequivocally that "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision." Fed. R. Civ. P. 26(b)(3) Advisory Committee Note (1970). The courts are uniform that such "dual-purpose" documents do not enjoy work-product protection and are subject to discovery. *See, e.g.*, *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 87 (N.D. Ill. 1992) ("[E]ven if litigation is imminent, there is no work product immunity for documents prepared in the ordinary course of business rather than for litigation purposes."); *City of Evanston v. N. Ill. Gas Co.*, No. 16-cv-5692, 2017 WL 11558474, at *2 (N.D. Ill. Aug. 31, 2017) ("[D]ocuments prepared for other reasons, such as documents created in the ordinary course of business, cannot be withheld as work product."). *Cf. RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 747 (E.D. Va. 2007) (work product privilege is "designed to protect only work that was conducted because of [] litigation, not work that would have been done in any event"). Here, the Illinois Medical Studies Act itself, which Wexford invokes for the peer-review

privilege, states that the privilege only applies to information "used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care." 735 ILCS 5/8-2101. That is the ordinary function and business of a health care provider like Wexford. What Plaintiff said in her original motion is true here too: "These are documents created in the usual course of business at Wexford as part of 'quality control' and cannot be work product, as the work product privilege only protects those documents created in anticipation of litigation." ECF 173 at 9. The Court should compel their production.

## CONCLUSION

Plaintiff respectfully requests that the Court grant her motion to compel.

Dated: May 16, 2022                                    Respectfully submitted,

/s/ Stephen H. Weil
*Attorney for Plaintiff Victoria Green*

Arthur Loevy
Jon Loevy
Sarah Grady
Steve Weil
Alison Bitterly
LOEVY & LOEVY
311 N. Aberdeen Street, Third Floor
Chicago, Illinois 60607
(312) 243-5900