## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **VICTORIA GREEN,** *as Administrator of the Estate of Craigory Green,* | |
| **Plaintiff,** | **Case No. 20-cv-00463-SPM** |
| **v.** | |
| **STEVEN MEEKS,** *et al.,* | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court regarding discovery disputes between the parties. Plaintiff has filed two motions to compel. (Doc. 173, 184). For the following reasons, the first motion to compel is granted and the second is granted in part and denied in part.

### PLAINTIFF'S REQUESTS TO COMPEL DOCUMENTS LISTED IN PRIVILEGE LOG (DOC. 173, DOC. 184, P. 10-11)

### I. Arguments

In the first motion to compel, Plaintiff has requested the Court to order Defendant Wexford Health Sources, Inc. ("Wexford") to produce 1) a mortality worksheet regarding Craigory Green's death dated October 29, 2018, authored by Co-Defendant Dr. Siddiqui; and 2) an email transmitting the worksheet dated October 30, 2018, sent by Wexford Regional Medical Director Dr. Roderick Matticks to seven Wexford employees. (Doc. 173).[1] Wexford objected to producing these documents on basis that they are protected by peer-review privilege under the Illinois's peer-

---

[1] Plaintiff states that the parties have have met and conferred and have engaged in written correspondence in an effort to resolve this discovery dispute, but to no avail. *See* FED. R. CIV. P. 37(a)(1).

review privilege, the Illinois Medical Studies Act, 735 ILCS 5/8-2101, *et seq*, ("IMSA"), and work product privilege citing Federal Rule of Civil Procedure 26(b)(3). Plaintiff argues that state law does not create privileges governing federal litigation in federal court, and thus, the peer-review privilege of the IMSA is not applicable in this case. Plaintiff also argues that these documents are not protected by the work product privilege, as they were not created in anticipation of litigation. Plaintiff asserts the documents should be handed over immediately.

In the response opposing the motion, Wexford argues that the mortality review documents are subject to IMSA as they are confidential records used in the course of internal quality control for the purpose of reducing morbidity or mortality. (Doc. 177; Doc. 173-1, p. 2). Wexford acknowledges that there is no rule that requires the Court to apply state law privilege to this case asserting federal claims. Relying on *Memorial Hospital for McHenry County v. Shadur,* Wexford contends, however, that the Court should recognize the privilege stated in the IMSA as an act of comity to state law. (Doc. 177, p. 1) (citing *Mem'l Hosp. for McHenry Cty. v. Shadur,* 664 F. 2d 1058, 1061 (7th Cir. 1981)). Wexford did not respond to the Plaintiff's argument that the documents did not constitute work product.

After the first motion to compel was fully briefed, Plaintiff filed a second motion to compel stating that Wexford had supplemented its privilege log to include new assertions of the Illinois peer-review privilege under the IMSA and work product privilege. (*See* Doc. 184, p. 2-3, 11; Doc. 184-4). The additional documents in contention are (1) three emails forwarding different mortality worksheets dated February 2, 2016, December 30, 2015, and October 13, 2015; and (2) ten emails forwarding analysis done on behalf of Wexford to prepare to respond to the expert report in the class action lawsuit *Lippert v. Ghosh.* (Doc. 184-4, para. 1, 2, 6-18).  Wexford also uses the peer-review privilege in the context of Wexford's 30(b)(6) deposition. (*See* Doc. 184-3). She reasserts that arguments raised in the first motion to compel and states that regardless of the document, state

law peer-review privilege does not apply. (Doc. 184, 10-11).[2]

Plaintiff also takes issue with Wexford asserting peer-review privilege under the IMSA and work product privilege for many of the same documents. She argues again that the privilege log states the documents were created for "internal quality control" and cannot be work product as the work product privilege only protects those documents created in anticipation for litigation. She contends that such dual-purpose documents do not enjoy work product protection and are subject to discovery. Plaintiff asks the Court to compel the production of the additional documents listed in the supplemental privilege log.

Defendant Wexford opposes Plaintiff's second request to compel production of the new documents listed on the supplemental privilege log. (Doc. 186, p. 11). Wexford states that Plaintiff's first motion to compel only applies to two documents, and therefore, Wexford's response in opposition relied on the specific attributes of those documents. The new documents included in the supplemental privilege log are very different types of documents from those addressed in the prior motion to compel and have different support for the assertion of work product privilege. Wexford argues that the first motion to compel should not be broadened to incorporate these additional documents, and the Court should make a determination on application of the privilege to those documents only. Wexford further states that Seventh Circuit jurisprudence states that courts should take into account particular factual circumstances in which the issue of the IMSA privilege arises. Here, Plaintiff has failed to argue why the privilege provided under the IMSA should not be applied to the other documents that are listed in the supplemental privilege log. Nor has Plaintiff provided support for an argument that the state interest in encouraging peer review for medical practitioners should be overruled by her need for the information here. Plaintiff

---

[2] Plaintiff also asserts that prior to filing the second motion to compel, she asked Wexford to agree that the Court's ruling on the first motion to compel should also resolve its assertion of the peer-review privilege as to the newly added documents to the privilege log. Wexford refused. (Doc. 184, p. 10).

has received a multitude of other documents, and she does not establish why she further needs the documents in the supplemental privilege log.

As for the additional documents being protected by work product privilege, Wexford argues that Plaintiff only makes broad arguments and contends that Plaintiff's objections to work product privilege are conclusory and do not identify any deficient document or privilege.

## II. Legal Standard

The scope of discovery in federal civil cases is governed by Federal Rule of Civil Procedure 26. The Rule states that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). The term "relevant" for the purposes of discovery is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). Federal courts permit liberal discovery, and "the party opposing discovery has the burden of proving that the requested discovery should be disallowed." *Peppers v. Credit One Bank, N.A.,* No. 17-2190, 2018 WL 8244003, at *2 (C.D. Ill. Dec. 21, 2018) (citations omitted). *See also Rubin v. Islamic Republic of Iran,* 349 F. Supp. 2d 1108, 1111 (N.D. Ill. Dec. 1, 2004) ("Courts commonly look unfavorably upon significant restrictions placed upon the discovery process").

## III. Discussion

### a.  State Law Peer-Review Privilege

The IMSA "protects the records, reports, notes, and the like, of hospitals, hospital committees, medical societies, and other review groups used in the course of internal quality control or medical study for the purpose of improving morbidity and mortality, or for improving patient care." *Buechel v. United States*, 08 C 132, 2010 WL 3613930, at *1 (S.D. Ill. Sept. 8, 2010)

(citing 735 ILCS 5/8-2101 *et seq.*). The privilege established by the IMSA "is intended to 'ensure that members of the medical profession will effectively engage in self-evaluation of their peers in the interest of advancing the quality of health care.'" *Levitin v. Northwest Comm. Hosp.* No. 13 C 5553, 2014 WL 5510949, at *1 (N.D. Ill. Oct. 31, 2014) (quoting *Roach v. Springfield Clinic*, 623 N.E.2d 246, 251 (Ill. 1993).

As the Seventh Circuit and other district courts in this circuit have recognized, "the privilege arising under the IMSA is not binding on this Court where Plaintiff's principal claims arise under 42 U.S.C. § 1983," as they do here. *Arsberry v. Wexford Health Sources, Inc*., No. 17-cv-50044, 2021 WL 5232733, at *9 (N.D. Ill. Nov. 10, 2021) (citations omitted); *Hamdan v. Ind. Univ. Health N. Hosp., Inc.,* 880 F. 3d 416, 421 (7th Cir. 2018); *Shadur*, 664 F. 2d at 1061; *McLaughlin v. Tilden*, No. 13-cv-1600, 2015 WL 888921, at *1 (C.D. Ill. Feb. 27, 2015). But, as Wexford points out, while federal law may govern issues regarding privilege in federal question cases, "federal courts should as a matter of reason, experience, and comity, consider the law of the state in which the case arises, and recognize that state's evidentiary privileges 'where this can be accomplished at no substantial cost to federal substantive and procedural policy.'" *Mattice v. Mem'l Hosp. of South Bend*, 203 F.R.D. 381, 384-85 (N.D. Ind. 2001) (quoting *Shadur*, 664 F.2d at 1061)). In determining whether a state privilege should apply, a court considers the factual circumstances of the cases and "weigh[s] the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case." *Shadur,* 664 F. 2d at 1061-62. At the same time, Seventh Circuit has instructed courts to keep in mind that "because evidentiary privileges operate to exclude the relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed." *Id*. *See also Hamdan,* 880 F. 3d at 421 ("evidentiary privileges are disfavored because

they impede fact-finding by excluding relevant information").

The Court finds that "the interest of seeking truth outweighs concerns about the flow of information among medical professionals" in this case. *McLaughlin*, 2015 WL 888921, at *2. *See also Johnson v. Cook Cty.*, No. 15 C 741, 2015 WL 5144365, at *4 (N.D. Ill. Aug. 31, 2015); *Estate of Belbachir v. Cty. of McHenry*, No. 06 C 01392, 2007 WL 2128341, at *7 (N.D. Ill. Jul. 25, 2007). In support for the contention that recognizing the privilege would occur at no substantial cost to federal policy or Plaintiff's case, Wexford wrongfully compares Plaintiff's claims with a medical malpractice case and argues that recognizing peer-review privilege in a medical malpractice action, such as this one, "will generally have little impact upon the plaintiff's ability to prove a meritorious claim." (Doc. 177, p. 5) (quoting *Shadur*, 664 F. 3d at 1062). But Plaintiff has not alleged medical malpractice. She asserts that the inadequate care experienced by Craigory Green was the result of deliberate conduct on the part of Defendants and widespread practices and policies impacting the medical care of all prisoners in IDOC custody and ultimately resulted in his death. These types of claims are "entirely separate from tort liability in a medical malpractice suit, and often harder for a plaintiff to prove." *Johnson*, 2015 WL 5144365, at *4 (citations omitted). Thus, recognizing peer-review privilege in this case would come at the cost to federal policy. As the district court in *Johnson v. Cook County* observed:

> Plaintiff is alleging that various constitutional violations led to the death of an inmate, whose safety and well-being were the responsibility of the state. Congress enacted Section 1983 to provide a vehicle for plaintiffs to address precisely this type of concern.

2015 WL 5144365, at *4 (citing *Belbachir*, 2007 WL 2128341, at *6). The federal interest in providing constitutionally adequate medical care to those incarcerated "overrides the state interest animating the IMSA privilege." *Crook v. Dart*, 408 F. Supp. 3d 928, 930 (N.D. Ill. 2019). The Court will not allow state law privilege to block the production of relevant evidence in this case.

Even if the Court decided to recognize state law peer-review privilege, Wexford has not demonstrated that the IMSA is even applicable here. "As the party seeking to invoke the privilege, [Wexford] bears the burden of establishing that the privilege applies." *Levitin*, 2014 WL 5510949, at *1 (citing *Cornejo v. Mercy Hosp. and Med. Ctr.,* No. 12–1675, 2014 WL 4817806, at *3 (N.D. Ill. Sept. 15, 2014)). *See also Hamdan,* 880 F. 3d at 421 (affirming the district court's ruling that the plaintiff did not "establish that the particular impeachment questions were prohibited by the states' peer-review statues"). The Court finds that Wexford has not met this burden. Wexford has not responded to Plaintiff's argument that the IMSA does not protect information belonging to correctional healthcare companies, such as Wexford, who contract with prisons. (Doc. 173, p. 8). In support of her argument, Plaintiff cites to an Illinois Appellate Court case in which the court ruled that an assisted living facility was not covered by the IMSA. *Pietro v. Marriott Senior Living Serv., Inc*., 810 N.E. 2d 217, 223 (Ill. App. Ct. 2004). The appellate court noted that the IMSA "does not protect all information used for quality control, but only that information belonging to certain entities and categories of organizations." *Id.* In a more recent case, *Beccara v. Dialysis Ctrs. of America-Illinois, Inc*., the Illinois Appellate Court found that a dialysis center had not demonstrated it was a "licensed or accredited hospital" or "medical organization[]under contract with health maintenance organizations or with insurance or other health care delivery entities or facilities" for the purposes of the IMSA. No. 1-19-0099, 2020 WL 1082571, at *5 (Ill. App. Ct. Jan. 16, 2020). Again, the appellate court stated that a defendant must first establish that the organization is covered under the IMSA when asserting the privilege. *Id.* Wexford has not established that it is an entity covered by the IMSA for the purpose of any of the documents on the privilege log, and so it cannot assert the privilege.

For these reasons, the Court finds that the documents cannot be withheld based on the peer-review privilege pursuant to the IMSA.

### b.  Work Product Privilege

The work product doctrine is governed by Federal Rule of Civil Procedure 26(b)(3), which provides that "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." FED. R. CIV. P. 26(b)(2). "The doctrine shields from disclosure two types of work: (1) an attorney's thought processes and mental impressions; and (2) an attorney's fact-finding investigation." *IGL-Riggig, LLC v. Kingsbridge Tech.,* 2021 WL 1172654, at *3 (N.D. Ill. Mar. 29, 2021) (citing *Sandra T.E. v. S. Berwyn Sch. Dist.* 100, 600 F.3d 612, 619 (7th Cir. 2010)). As with the privilege asserted under the IMSA, it is on Wexford to establish that the work product privilege applies to the (1) mortality worksheets and corresponding emails and (2) emails forwarding analysis done on behalf of Wexford to prepare to respond to the expert report in the class action lawsuit *Lippert v. Ghosh. See U.S. v. Hamilton,* 19 F. 3d 350, 354 (7th Cir. 1994). Again, Wexford has not met this burden.

In the response in opposition to the first motion to compel, Wexford does not respond to Plaintiff's argument concerning the work product privilege objections for the mortality work sheet prepared by Dr. Siddiqui and the corresponding email. (Doc. 184-4, para. 1-2). In response to the second motion to compel, Wexford states that Plaintiff's opposition to the work product privilege is conclusory and does not identify any deficient document or privilege assertion in particular that the Court should overrule. Wexford does not address the specific documents at issue in the privilege log or explain how the documents could have been generated specifically for the peer-review process and are protected under the IMSA, while simultaneously prepared in anticipation of ligation, and therefore, also protected by work product privilege. As there is "no work product immunity for documents prepared in the ordinary course of business rather than for litigation purposes," the Court cannot determine that the documents qualify for the privilege asserted. *Jumper v. Yellow Corp.,* 176 F.R.D. 282, 287 (N.D. Ill. 1997). *See also Urban 8 Fox Lake Corp.*

*v. Nationwide Affordable Housing,* 334 F.R.D. 149, 156 (N.D. Ill. 2020) ("blanket claims of privilege are impermissible").

Finally, the Court notes that Wexford contends that the privilege log encompasses communications from counsel regarding responding to the *Lippert* report. (Doc. 186, p. 12). However, this statement appears to apply to the documents listed in paragraphs 3, 4, and 5 of the privilege log, described as email communications from counsel to Wexford regarding *Lippert v. Ghosh.* Plaintiff has not moved to compel these documents, so this information does not affect the Court's decision. (*See* Doc. 184, p. 10).

Accordingly, the Court finds that Wexford has failed to demonstrate that the documents listed paragraphs 1, 2, 6-18 of the privilege log are protected by work product privilege. As the documents do not qualify for the privileges asserted, the requests to compel these documents is granted.

### PLAINTIFF'S MOTION TO COMPEL (DOC. 184)

In the second motion to compel before the Court, Plaintiff seeks to compel 1) discipline and evaluation records; 2) documents related to the claim for punitive damages; 3) Wexford policy manuals; 4) complaints and grievances; and 5) death documents. The Court will address each discovery request in turn. (Doc. 184).

### 1. Discipline and Evaluation Records

*Production Request #25*

Plaintiff requests all documents relating to the medical credentials and qualifications of each individual defendant. his request includes but is not limited to proof of licensing, certification, and/or registration; all Communications to and from state-licensing, certifying, and/or disciplinary bodies; resumes or curriculum vitae; and all training records.

*Production Request #26*

Plaintiff seeks the complete personnel file of each of the Individual Defendants.

This request includes but is not limited to all Documents relating to any Individual Defendant's hiring, promotion, demotion, pay raise, pay cut, bonus, employee review, duties, disciplinary review, commendation, reprimand, censure, termination, or resignation in the course of their employment with Wexford, the IDOC, or any other contracting entity, including Communications by Defendants or their agents responsive to this request.

Plaintiff states that Defendants objected to her original request for documents relating to Defendants' employment with either the Illinois Department of Corrections ("IDOC") or Wexford. After discussion with Defendants, however, she limited the requested documents to training records, disciplinary documents, and documents reflecting evaluations of job performances. (Doc. 184, p. 3-4). Plaintiff contends that Defendants still refuse to produce any discipline or evaluation materials.

*IDOC Defendants*

Plaintiff states that she conferred in good faith with counsel for the defendants regarding each of the subjects of the motion to compel, "which includes multiple emails between counsel as well as telephonic conferences to discuss the discovery at issue in this motion." (Doc. 184, p. 2, n. 1). Defendants Walls, Mears-Attig, and Meeks ("IDOC Defendants") disagree and ask the Court to deny the motion to compel based on Plaintiff's failure to meet and confer as required by Rule 37. (Doc. 185).

The Court agrees with IDOC Defendants that Plaintiff has not met her requirement of making a good faith effort to resolve the discovery disputes regarding Document Requests #25 and #26. Rule 37 of the Federal Rules of Civil Procedures provides that prior to filing a motion to compel discovery, parties must "confer in good faith before involving the court in discovery disputes." *Houston v. C.G. Sec. Services, Inc.,* 820 F.3d 855, 858 (7th Cir. 2016). According to the record, regarding the discovery at issue in the current motion, Plaintiff sent a single letter on December 6, 2021, and the parties met on December 14, 2022. Following the meeting, IDOC

Defendants provided supplemental responses and additional discovery, originally sent on February 7, 2022, and then again on February 25, 2022, after receiving notification that Plaintiff had not received a response to the December 6 letter. (Doc. 185, p. 2-3). Other than these two interactions, the letter and the meeting, there is nothing indicating further communication between the parties regarding Requests #25 and #26 after IDOC Defendants responded to the December 6 letter and provided supplemental responses and additional discovery.

The lack of communication between the parties is evident by the briefs. Plaintiff cites to the December 6 letter and states that IDOC Defendants still refuse to produce "*any* discipline or evaluation materials." (Doc. 184, p. 4) (emphasis added). Contrary to this assertion, IDOC Defendants contend that they supplemented and produced responses related to Plaintiff's request for discipline and evaluation records. (Doc. 185, p. 4). Thus, it is not exactly clear what documents Plaintiff is still seeking from each IDOC Defendant. Accordingly, the request to compel production of Requests #25 and #26 against IDOC Defendants is denied.

*Wexford Defendants*

Defendants Wexford, Siddiqui, Shah, Moldenhauer, and Zimmer ("Wexford Defendants") argue that they have already produced the requested documents. (Doc. 186, p. 2). Wexford Defendants point out that in the motion to compel, Plaintiff only cites to the December 6 letter sent to the IDOC Defendants, and they state they believe that Plaintiff included them in this request by mistake. Plaintiff has not provided a reply refuting this assertion. As there appears to be nothing to compel, the motion to compel Requests #25 and #26 against Wexford Defendants is also denied.

**2. Documents Related to the Claim for Punitive Damages**

*Production Request #44*

Plaintiff requests all documents in Defendants' possession, custody, or control that would support or rebut a contention by any of the Defendants that an award of punitive damages would cause a financial hardship to that Defendant.

Page 11 of 22

*Production Request #45*

Plaintiff requests all documents relating to Defendants' net worth, including all documents relating to any assets in your possession with a value in excess of $2,500, copies of monthly statements for the period of January 2013 through the present, copies of insurance policies, a copy of the deed to your residence, a copy of your automobile title, all documents relating to any ownership interest in any real estate, a copy of your last four pay stubs, all documents relating to any mortgage applications, and copies of your last five tax returns.

The motion to compel Requests #44 and #45 is directed only at IDOC Defendants. IDOC Defendants objected to these Requests as irrelevant and not proportional to the needs of the case. They further state that the Illinois Law indemnifies Defendants against damages. (Doc. 184-5, p. 17; Doc. 185, p. 5-6).[3]  In their response to the motion to compel, IDOC Defendants again argue that the request to compel should be denied due to Plaintiff's failure to confer in good faith prior to filing the motion. IDOC Defendants further state that they stand by their objection that the request is not proportional to the needs of the case. They do not, however, contend that the information is irrelevant or cite to indemnification as objections to the request. Thus, the Court deems these arguments waived. *See Beverly v. Depuy Orthopaedics, Inc*., No. 07–CV–137–AS, 2008 WL 45357, at *2 (N.D. Ind. Jan. 2, 2008) ("An underdeveloped argument, or argument not raised at all, is a waived argument." (citing *Boyd v. Owen*, 481 F.3d 520, 524-25 (7th Cir.2007)).

There appears no possible compromise regarding this dispute without Court intervention. Therefore, the Court will not deny the motion to compel Requests #44 and #45 based on Plaintiff's failure to adhere to Federal Rule of Civil Procedure 37(a)(1). *See Bass v. Kansas City Southern Railway Co.,* No. 20-cv-01365-NJR, 2022 WL 3153960, at *2 (S.D. Ill. Aug. 8, 2022) (noting that a court may waive strict compliance with the conference requirement).

---

[3] IDOC's objection to Request #44 regarding medical records appears to be a typographical error and will not be addressed by the Court.

"A defendant's financial condition is relevant to the pursuit of punitive damages." *United States v. Autumn Ridge Condo. Ass'n, Inc.,* 265 F.R.D. 323 (N.D. Ind. 2009) (quoting *Platcher v. Health Prof, Ltd.,* No. 04-1442, 2007 WL 277855, at *2 (C.D. Ill. Sept. 18, 2007). *See also Challenge Aspen v. King World Prods. Corp.,* No. 00 C 6868, 2001 WL 1403001, at *3 (N.D. Ill. Nov. 9, 2001). The Court agrees, however, that the Requests are not proportional to the needs in this case. In addition to requesting all documents regarding current assets, insurance policies, property, and income or that would support or rebut a contention that an award of punitive damages would cause a financial hardship, Plaintiff seeks mortgage applications for the past three years, tax returns from the last five years, and bank statements dating back from January 2013. (Doc. 184-5, p. 16-17). "Only Defendants' *current* assets and liabilities are relevant to the punitive damages claims against them, and the documents requested far exceed what is necessary to establish those figures." *Platcher,* 2007 WL 277855, at *3. *See also Fieldturf Int'l, Inc. v. Triexe Mgmt. Group,* No. 03 C 3512, 2004 WL 866494, at *3 (N.D. Ill. 2004); *Raiser v. O'Shaughnessy,* No. 92 C 286, 1992 WL 309541, at *1 (N.D. Ill. Oct. 21, 1992). Further, the Court finds it "more appropriate to postpone such discovery until it appears that Defendants will be liable for punitive damages." *Lanigan v. Babusch,* No. 11 C 3266, 2011 WL 5118301, at *4 (N.D. Ill. Oct. 27, 2011). Accordingly, the request to compel responses to Requests #44 and #45 is denied at this time. Plaintiff may renew her motion should her claims survive summary judgment and if it appears that the issue of punitive damages will be presented to the jury. *See Farris v. Kohlrus,* No. 17-cv-3279, 2019 WL 351876, at *6 (C.D. Ill. Jan. 29, 2019); *Livesay v. Nat'l Credit Sys., Inc.,* No. 22-cv-19-TLS-JEM, 2022 WL 17432341, at *6 (N.D. Ind. Dec. 5, 2022).

**3. Wexford Policy Manuals**

Although Plaintiff's original Production Request #37 for various Wexford policy documents is much broader, Plaintiff has limited her motion to compel to three specific manuals:

Wexford's Utilization Management Policies/Guidelines; Wexford's Provider Handbook; and Wexford's Quality Management Program. (Doc. 184; Doc, 185, p. 3). Plaintiff contends that Wexford, however, has refused to produce them and insists that Plaintiff identify pages from the manuals – sight unseen – for Wexford to produce. Plaintiff states that Wexford's counsel stated that the basis for refusing to produce the policies is not that doing so would be burdensome in anyway, but that Wexford was withholding the documents as they contained irrelevant and confidential material.

Wexford argues that the manuals mostly consist of policies that are completely irrelevant to this case. Wexford states it offered to produce to Plaintiff the table of contents from each manual, and then Plaintiff could select from the table of contents the portions of the manuals she would like produced. Wexford has produced portions of other manuals, not currently at issue, through this same process. The number of pages produces from various manuals totals 1,356 pages. However, Plaintiff refused to identify relevant portions of the three manuals that are the focus of the motion to compel. Wexford states that Plaintiff has not provided good cause or reason for why the manuals should be treated differently from the others.

The request to compel production of Wexford's Utilization Management Policies/Guidelines; Wexford's Provider Handbook; and Wexford's Quality Management Program is granted. Wexford has not met its burden of demonstrating with specificity why the production of the requested manuals is improper due to containing large amounts of irrelevant information. *See Kodish v. Oakbrook Terrace Fire Protection District,* 235 F.R.D. 447, 449–50 (N.D. Ill. 2006) (the "burden rests upon the objecting party to show why a particular discovery request is improper"); *Graham v. Casey's General Stores,* 206 F.R.D. 251, 254 (S.D. Ind. 2002) ("the objecting party must specifically detail the reasons why each [request] is irrelevant....") (internal citations and quotations omitted). And as Plaintiff points out, "discovery is not improper

simply because a party's request is likely to unearth some documents that eventually prove to be irrelevant to that party's claim[.]" *Arsberry,* 2021 WL 5232733, at *10 (quoting *Awalt v. Marketti,* No. 11 C 6142, 2012 WL 6568424, at *5 (N.D. Ill. Dec. 17, 2012)).

In support of their objection, Wexford provides the example that the Provider Handbook "provides guidance to both dentists, psychiatrists, and physicians." But this fact alone does not necessarily show that the manual is largely irrelevant, only that the Provider Handbook applies to more than one type of provider. There is nothing else in the record for the Court to conclude that production would result in Plaintiff obtaining "a significant amount of irrelevant information," as asserted. Wexford does not argue that the manuals contain confidential information or would be unduly burdensome to produce. Thus, the Court sees no reason not to compel their disclosure.

### 4. Complaints and Grievances

*Plaintiff's Request #13*

Plaintiff seeks all documents relating to Complaints by prisoners alleging denial of either hepatic procedures and/or organ transplant procedures by the IDOC and/or Wexford.

*Plaintiff's Request #29*

Plaintiff seeks all documents relating to any Complaint of any Person alleging any kind of misconduct committed by any Individual Defendant within the scope of his or her employment.

*Plaintiff's Request #31*

Plaintiff seeks all documents relating to all Complaints since January 1, 2011, by any Person concerning:

 a. Inadequate medical care or denial of medical care at Menard Correctional Center;

 b. A refusal or failure to arrange for evaluation or treatment of a Menard prisoner by an outside healthcare provider;

 c. A refusal or failure to diagnose a serious medical condition of a Menard prisoner;

 d. A refusal or failure to provide or facilitate evaluation for transplant procedures for a Menard prisoner;

e. A refusal or failure to coordinate the medical care of a Menard prisoner, including but not limited to the refusal or failure to obtain or review the prisoner's medical records.

*Plaintiff's Request #50*

Plaintiff seeks all documents relating to any lawsuit or Complaint to which any Defendant has ever been a party. This request is limited to the last ten years.

The motion to compel responses to Requests #13, #29, #31, and #50,[4] is directed at the Wexford Defendants only. Plaintiff argues that Wexford Defendants have largely refused to search for documents responsive to these requests. (Doc. 184, p. 7-8). Plaintiff sought to narrow the requests to apply to complaints and grievances against the individual Wexford Defendants in this case, but Wexford rejected this offer. Instead, Wexford Defense Counsel has limited the search to litigation documents filed by IDOC prisoners against Wexford relating to liver transplants. These limitations have resulted in the production of just one litigation document.

Wexford Defendants argue that the requests are overly broad and overly burdensome. (Doc. 186, p. 7-8). They further contend that the motion to compel has been untimely filed. (*Id.* at p. 6). They provided their responses and objections to these requests over a year ago on November 19, 2020. It would be costly, and they do not have time to perform further investigation to fulfill Plaintiff's overly broad requests at this late stage in discovery.

The Court grants the request to compel Requests #13 and #31, as limited by Plaintiff to apply to only complaints involving Wexford Defendants. Plaintiff seeks all documents relating to all complaints that concerns (1) the denial of either hepatic procedures and/or organ transplant procedures by Wexford; or (2) inadequate medical care provided at Menard Correctional Center

---

[4] Plaintiff's motion to compel lists Requests #13-15, but Request #14 requests policy documents concerning organ transplants, not grievances or complaints. Further, Request #14 is not included in the letter sent to Wexford Defendants on March 4, 2022, detailing outstanding discovery issues between the parties. It appears that Request #14 was included in the motion to compel in error and will not be addressed in this Order. Request #15 will be discussed later in this Order.

by a Wexford Defendant. The Court does not find Wexford Defendants' relevance argument well taken. Wexford Defendants argue that "Plaintiff cannot show that the complaints by other inmates –about events that did not affect Craigory Green—are relevant to this case." (Doc. 186, p. 8). As has been discussed in previous Orders by this Court, "[t]o prove an official policy, custom, or practice within the meaning of *Monell*, [a plaintiff] must show more than the deficiencies specific to his own experience[;]" he must demonstrate "systemic and gross deficiencies in staffing, facilities, equipment, or procedures in a detention center's medical care system." *Daniel v. Cook Cty.*, 833 F.3d 728, 734-35 (7th Cir. 2016). Plaintiff does not have to show that other prisoners suffered from the exact same medical condition or physical injury as Mr. Green but that the other prisoners suffered from similar constitutional violations resulting from the same policy. *See Howell v. Wexford Health Sources, In.,* 987 F. 3d 647, 657-58 (7th Cir. 2021) (upholding the district court's denial of four inmates from testifying at trial finding that the witnesses' testimony would not show sufficient similarity to "permit a reasonable inference that [Plaintiff] and these four witnesses suffered similar constitutional violations caused by a common widespread practice"). To make this showing, Plaintiff must be allowed broad discovery into the treatment of other inmates, including inmates who did not suffer from the exact same medical issues as the plaintiff. The Court will not limit the scope of discovery to information only pertaining to Green's specific medical conditions.

While it may be true that discovery responsive to the request for complaints against Wexford Defendants regarding "inadequate medical care" will include irrelevant information, as previously stated, this does not make a discovery request improper. *See Awalt,* 2012 WL 6568242, at \*5. The discovery sought must "appear reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). Plaintiff alleges that the denial of medical care was the result of policies and practices maintained by Wexford (Doc. 39, p. 26), and to succeed on this

claim she must show that the policies and practices did not just impact Green but were widespread. Thus, the discovery requests seek production of complaints made by other inmates regarding inadequate medical care is "reasonably calculated to lead to the discovery of evidence that is relevant and admissible to prove her *Monell* claims." *Awalt,* 2012 WL 6568242, at *6 (granting the plaintiff's motion to compel "all documents relating to any and all complaints by detainees or any other person alleging inadequate medical care").

The does not find Wexford's additional arguments regarding Requests #13 and #31 well taken. Wexford's argument that allowing the discovery requests would impose undue burden and expense is only a conclusory statement and not supported by "a particular and specific demonstration of fact." *Jenkins v. White Castle Mgmt. Co.,* No. 12 C 7273, 2014 WL 3809763, at *2 (N.D. Ill. Aug. 4, 2014) (quoting *Gul Oil Co. v. Bernard,* 452 U.S. 89, 102 n. 16 (1981)). Additionally, the Court will not deny the request as untimely. The there is no time limit on motions to compel in the Federal Rule of Civil Procedure, and the Court will extend the discovery deadlines as needed.

The Court will limit Request #13 to complaints filed since January 1, 2011. While this seems like an extensive period of time, Green was under the care of Defendants since 2012. He was diagnosed with sclerosing cholangitis in 2011, while in custody and Cook County Jail, and was transferred to IDOC custody in 2012.

The Court denies the requests to compel Request #29 and #50. These Requests are overly broad. Request #29 is not limited by time or subject matter, and Request #50 is not limited by subject matter. Any and all documents relating to any litigation or complaint involving Defendants would include matter not reasonably calculated to lead to the discovery of admissible evidence regarding the medical claims in this case. The requests to compel these requests are denied.

**5. Death Documents**

*Plaintiff's Request # 15*

Plaintiff seeks all documents relating to the deaths of any prisoner who died after the IDOC or Wexford declined, refused, or delayed the provision of organ transplant procedures to that prisoner.

*Plaintiff's Requests #32*

Plaintiff seeks all documents relating to deaths by prisoners from liver disease in facilities where Wexford is contractually responsible for providing medical care between January 1, 2010, and the present. This request includes but is not limited to medical records, death investigations, death certificates and autopsies, Correspondence about any such death, and documents reflecting meetings regarding any such death.

*Plaintiff's Request #33*

Plaintiff seeks all documents relating to deaths of Menard prisoners between January 1, 2010, and the present, excluding deaths caused by homicide.

*Plaintiff's Request #34*

Plaintiff seeks all documents containing, memorializing, or pertaining to requests by Wexford or any of its employees or agents for evaluation, consultation, or treatment of prisoners for organ transplant procedures by an outside healthcare provider. This request includes but is not limited to referral requests, requests for consultation, reports of consultation, collegial review, authorization comments, pre-certification notifications, non-approval/approval forms, launch reports, certifications of service, daily activity reports, and all other utilization management documentation. This request covers January 1, 2011 to October 28, 2018.

The request to compel Requests #15, #32, #33, and #34 are again only directed at Wexford Defendants. Plaintiff argues that Wexford has searched for only one type of document, memoranda relating to death, and this search has been limited to liver deaths and has refused to search for any other documents relating to inmate deaths. These limitations prevent Plaintiff from obtaining relevant discovery.

Wexford states that they have produced documents on deaths of inmates in two sets – first in the ESI production, and second in a targeted review and production of death memoranda of

those inmates who died with liver disease while incarcerated at Menard. Any non-privileged, responsive documents that pertained to deaths of Illinois inmates included in the ESI discovery have been produced. Wexford argues that Plaintiff's demand for production of documents on deaths related to all diseases is overly broad and not relevant to this case.

For similar reasons discussed above regarding Plaintiff's requests for complaint related documents, the Court grants the requests to compel production of Requests #15, #32, #33, and #34 to the extent such documents have not already been produced through ESI discovery. Request #15 will be limited to documents from January 1, 2011, through the present.

### MOTION FOR PROTECTIVE ORDER

The Wexford Defendants have filed a motion seeking to stay the deposition of Wexford by representative Dr. Rod Matticks until the Court rules on the pending Motions to Compel. (Doc. 192). Wexford has served written objections to the scope of the topics discussed during the deposition, including topics it claims are privileged under the Illinois Medical Studies Act. Plaintiff does not object to an order confirming that Dr. Matticks does not need to sit for a deposition until the issues in the Motions to Compel have been resolved. (Doc. 194). As the Court has now ruled on the issue regarding the applicability of the IMSA to this case, the motion is granted to the extent Wexford is seeking to extend the deadline to conduct the deposition.

### JOINT MOTIONS TO EXTEND DISCOVERY DEADLINES

The Join Motions to Extend Discovery Deadlines is granted. (Doc. 205, 211). Because of the ongoing discovery disputes that still require resolution by the Court, the parties shall have additional time to complete discovery. Fact discovery shall be completed by March 31, 2023. Plaintiff's Rule 26(a)(2) disclosures due April 20, 2023. Defendants' Rule 26(a)(2) disclosures due May 22, 2023. Plaintiff's rebuttal Rule 26(a)(2) disclosures due June 10, 2023. Expert discovery due July 10, 2023. Dispositive motions due August 10, 2023.

DISPOSITION

For the reasons stated above, the first Motion to Compel filed by Plaintiff and the request to compel documents from the privilege log contained in the second Motion to Compel are **GRANTED**. (Doc. 173; Doc. 184). Wexford shall produce the documents labeled paragraph 1, 2, 6-18 on the privilege log at Doc. 184-4 to Plaintiff on or before **February 15, 2023.**

The second Motion to Compel is **GRANTED in part and DENIED in part** (Doc. 184), as follows:

- The request to compel discipline and evaluation records against IDOC Defendants and Wexford Defendants (Requests #25 and #26) is **DENIED**.

- The request to compel documents related to the claim for punitive damages against IDOC Defendants (Requests #44 and #45) is **DENIED without prejudice**. Plaintiff may renew her motion if a claim for which punitive damages may be awarded survives dispositive motions and may be submitted to a jury.

- Within 21 days after the entry of an order by the Court denying any IDOC Defendants' dispositive motion on at least one claim for which punitive damages or the expiration of the dispositive motion deadline if not such motion is filed, each IDOC Defendant is **DIRECTED** to disclose financial documents in response to Requests #44 and #45 dating from January 1, 2022, to the present.

- The request to compel three Wexford Policy Manuals against Defendant Wexford (Request #37 revised) is **GRANTED**. Wexford shall produce the manuals on or before **February 15, 2023.**

- The request to compel complaints and grievances (Requests #13, #29, #31, #50) is **GRANTED in part and DENIED in part.** Wexford Defendants shall produce documents responsive to Requests #13 and #31, as revised in this Order, on or before **February 15, 2023.**

- The request to compel documents relating to the death of inmates against Wexford Defendants (Requests #15, #32, #33, #34) is **GRANTED.** Wexford Defendants shall produce documents responsive to Requests #15, #32, #33, and #34, as revised by this Order, on or before **February 15, 2023.**

The Motion for a Protective Order filed by Defendant Wexford is **GRANTED**. (Doc. 192).

The Joint Motions for Extension of Time are **GRANTED.** (Doc. 205; Doc. 211). Fact discovery shall be completed by March 31, 2023. Plaintiff's Rule 26(a)(2) disclosures due April 20, 2023. Defendants' Rule 26(a)(2) disclosures due May 22, 2023. Plaintiff's rebuttal Rule 26(a)(2) disclosures due June 10, 2023. Expert discovery due July 10, 2023. Dispositive motions due August 10, 2023.

**IT IS SO ORDERED.**

**DATED:  February 1, 2023**

_s/ Stephen P. McGlynn_
**STEPHEN P. MCGLYNN**
**United States District Judge**