UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

VICTORIA GREEN, as Administrator of the
Estate of CRAIGORY GREEN,

                        Plaintiff,

v.

STEVE MEEKS; et al.,

                        Defendants.

Case Number  3:20-cv-00463-SPM

District Judge Stephen P. McGlynn

## MOTION FOR RECONSIDERATION OF THE COURT'S ORDER

COME NOW Defendants, WEXFORD HEALTH SOURCES, INC., MOHAMMED SIDDIQUI, M.D., VIPIN SHAH, M.D., MICHAEL MOLDENHAUER, N.P., and MARY JO ZIMMER, N.P., by and through their attorneys, CASSIDAY SCHADE LLP, and for their Motion for Reconsideration of the Court's Order, state as follows:

## INTRODUCTION

Discovery in this matter has been progressing for over two years and is now in an advanced stage.  The current "Wexford Defendants," i.e., Wexford Health Sources, Inc., and current and former Wexford employees, Mohammed Siddiqui, M.D., Vipin Shah, M.D., Mary Zimmer, N.P., and Michael Moldenhauer, N.P., have responded to approximately 125 interrogatories and 52 requests for production of documents.  Wexford has produced over 334,000 pages of documents. The individual defendants have been deposed, and Wexford's corporate representative deposition has been taken in part.

After the parties were unable to resolve discovery disputes by conferring outside of court, Plaintiff filed two motions to compel discovery responses relevant here.  (Docs. 173, 184).

In her first Motion to Compel, Plaintiff sought production of certain documents called "Mortality Worksheets" and the emails conveying them. (*See* Doc. 173.) She argued that the Mortality Worksheets were not properly the subject of privilege under the Illinois Medical Studies Act and the work-product privilege. *See id.*

In her second Motion to Compel, Plaintiff sought four categories of documents from the Wexford Defendants: "Discipline and evaluation records;" "Wexford policy manuals;" "Complaints, grievances, and death documents," and documents subject to both peer-review privilege and attorney work-product privileges. (*See* Doc. 184.)

On February 1, 2023, the Court issued its order on Plaintiff's Motions to Compel. (Doc. 212).

The Court granted Plaintiff's first Motion to Compel, seeking production of the Mortality Worksheet on Decedent, Craigory Green, and the email forwarding it. These were items 1 and 2 on Defendants' Privilege Log.

The Court granted the second Motion to Compel in part, ordering the production of the following:

1. The Mortality Worksheets on three inmates aside from Decedent and emails forwarding them. (Items 6, 7, and 8 on the Privilege Log.)

2. Three Wexford Policy Manuals (Wexford Utilization Management Policies/Guidelines; Provider Handbook; and Quality Management Program guidelines), responsive to Request for Production No. 37 as revised in the Order.

3. Complaints by inmates against the individual Wexford defendants in this matter that are responsive to Requests for Production Nos. 13 and 31 as revised in the Order.

4. Documents on the deaths of inmates to the extent not produced in ESI discovery responsive to Requests for Production Nos. 15, 32, 33, and 34 as revised in the Order.

5. Ten internal Wexford emails and attachments discussing the Wexford response to the 2014 expert report that was issued in a separate lawsuit, *Lippert v. Ghosh,* NDIL 10-4603. (Items 9-18 on the Privilege Log.)

Memorandum and Order, Doc. 212.

Since receiving the Order, Wexford has been diligently searching for and preparing documents for production in compliance with the Order.

Today, Wexford is producing the Mortality Worksheets and emails conveying the Mortality Worksheets that appear as Items 1, 2, 6, 7, and 8 on the Privilege Log. It is producing the Wexford policy manuals that it was ordered to produce, which include 17 editions of three manuals. Regarding complaints in lawsuits, Wexford is in the process of identifying all complaints in lawsuits, it is nearing completion of list thus far of all such complaints against Dr. Mohammed Siddiqui and Michael Moldenhauer, and it is continuing to compile the information on the other individual defendants that it will provide as soon as it can be compiled. Regarding the documents on deaths of inmates in IDOC custody in response to Requests for Production Nos. 15, 32, 33, and 34 as revised in the Order, Wexford is in the process of identifying inmates who died at Menard Correctional Center, and inmates who died who were identified as being involved in organ transplants or who had treatment for liver disease. Wexford is filing a motion for extension of time to finish its compliance with the Court's Order contemporaneously with this motion.

The instant motion for reconsideration is narrowly focused on the final category above— the internal Wexford emails and attachments discussing the Wexford response to the 2014 expert report that was issued in *Lippert v. Ghosh*, appearing as Items 9-18 on the Privilege Log. *Lippert*

*v. Ghosh*, N.D.Il. 10-4603, is a 2010 class action lawsuit against the Illinois Department of Corrections regarding medical and dental care, where the court ordered an expert under Federal Rule of Evidence 706 to address certain allegations in the case.

Items 9-18 on the Privilege Log satisfy the criteria for work product privilege and (where asserted) attorney-client privilege, the privileges were properly asserted, Plaintiff did not raise any substantive challenge to the privileges that were asserted, arguing only that the privileges could not simultaneously be asserted with objections under the Illinois Medical Studies Act, and the Court did not make any factual findings contrary to the assertion of such privileges.  The record before the Court clearly establishes that the privileges exercised were proper.  The Court's Order compels the production of privileged materials.  Once released, that bell cannot be unrung.  For these reasons, as discussed below, Wexford respectfully requests that the Court reconsider its motion compelling production of the documents at Items 9-18 on the Privilege Log.

## LEGAL STANDARDS

### A. Motions to Reconsider

Defendants recognize that a Motion to Reconsider does not exist under the Federal Rules of Civil Procedure.  *Hope v. United States,* 43 F.3d 1140, 1142 n.2 (7th Cir. 1994).  However, Courts routinely consider such Motions under Rule 59(e) as Motions to Alter or Amend Judgment. *Hope,* 43 F.3d at 1142.  A Rule 59(e) motion gives the District Court the opportunity to correct its own errors prior to burdening the Court of Appeals and allows a party to seek relief for a manifest error of fact or law.  *Russell v. Delco Remy Division of General Motors Corp.*, 51 F.3d 746, 749 (7th Cir.1995); *Baker v. Lindgren*, 856 F.3d 498, 507 (7th Cir. 2017), citing *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014).

Federal Rule of Civil Procedure 54(b) provides that an interlocutory order that does not adjudicate all claims involving all parties to a suit "may be revised at any time before the entry of judgment." Fed. R. Civ. P. 54(b). Similar to Rule 59(e), reconsideration of an interlocutory order pursuant to Rule 54(b) is appropriate when there is a controlling change in the law or facts or when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). A district court "always ha[s] the power to modify earlier orders in a pending case." *Kapco Mfg. Co. v. C & O Enterprises, Inc.*, 773 F.2d 151, 154 (7th Cir. 1985); *accord Louis & Karen Metro Family, LLC v. Lawrenceburg Conservancy Dist.*, 2008 WL 4911869, at 5 (S.D. Ind. Nov. 14, 2008) (recognizing that judges have "inherent power to modify or rescind interlocutory orders prior to final judgment" (*quoting Peterson v. Lindner*, 765 F.2d 698, 704 (7th Cir. 1985))).

## B.  Work Product Privilege

In federal court, privileges are governed by federal common law, except that privileges are determined by state law for an element of a claim or defense as to which state law provides the rule of decision. *See* Fed. R. Evid. 501; *Babych v. Psychiatric Solutions, Inc.*, 271 F.R.D. 603, 608, 2010 U.S. Dist. LEXIS 132577, *9-10. In cases such as this one, where both federal and state claims are asserted, at least where the federal claims are primary, federal law applies to work product and attorney-client privileges. *See Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981). Where the federal jurisdiction is based on federal question, federal law governs the application of privileges. *See Babych v. Psychiatric Solutions, Inc.*, 271 F.R.D. 603, 608-610, 2010 U.S. Dist. LEXIS 132577, *14.

The work product doctrine, announced in *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947), protects from discovery otherwise discoverable documents and things, including an attorney's thoughts and mental impressions, made in anticipation of litigation.  The work product doctrine has been codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure.  Per Rule 26(b)(3)(A), the privilege applies to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  Such documents are not discoverable unless, per Rule 26(b)(3)(A), they are otherwise discoverable and a party shows that it has "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  And even if such a need is shown, if the court is to order production of such materials, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B).

The work product doctrine has been recognized as a qualified privilege, which is distinct from and broader than the attorney-client privilege. *U. S. v. Nobles*, 422 U.S. 225, 238, fn. 11, 95 S. Ct. 2160, 2170, 45 L. Ed. 2d 141 (1975); *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 613, 2000 U.S. Dist. LEXIS 11579, *6-7 (N.D.Il. Aug. 10, 2000).  In *Nobles*, the Court extended the work product doctrine to protect material prepared by investigators for the lawyer. *Id.*, 422 U.S. at 238, 95 S. Ct. 2170; *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 613, 2000 U.S. Dist. LEXIS 11579, *6-7.  The U.S. Supreme Court in *Upjohn Company v. U. S.*, 449 U.S. 383, 400, 101 S. Ct. 677, 688, 66 L. Ed. 2d 584 (1981) reaffirmed the strong public policy underlying the work product doctrine, stating that "forcing an attorney to disclose notes and memos of witness oral statements is particularly disfavored because it tends to reveal the attorney's mental processes." *Id.*, 449 U.S. at 399, 101 S. Ct. at 687; *Caremark, Inc. v.*

*Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 613, 2000 U.S. Dist. LEXIS 11579, *6-7 (N.D.Il. Aug. 10, 2000).

In order to invoke the protection of the work product privilege, a party must show that the materials sought to be protected were prepared "in anticipation of litigation. . . ." Fed. R. Civ. P. 26(b)(3). *Binks Mfg. Co. v. National Presto Industries, Inc.*, 709 F.2d 1109, 1118, 1983 U.S. App. LEXIS 27488, *28-29 (7th Cir. 1983). "Thus, the threshold determination in any case involving an assertion of the work product privilege… is whether the materials sought to be protected from disclosure were in fact prepared in anticipation of litigation." *Binks Mfg. Co. v. National Presto Industries, Inc.*, 709 F.2d at 1118.

Documents that have a "dual purpose" of both an investigative nature and preparation for litigation can be work product privileged where the primary motivating purpose behind the creation of a document or investigative report is to aid in possible future litigation. *Binks Mfg. Co. v. National Presto Industries, Inc.*, 709 F.2d at 1119; *Webster Bank, N.A. v. Pierce & Assocs., P.C.*, 2018 U.S. Dist. LEXIS 18653, *13-14, 2018 WL 704693 (N.D.Il. Feb. 5, 2018). "Where a document is prepared because of the prospect of litigation, analyzing the likely outcome of that litigation, it does not lose protection because it is also created in order to assist with a business decision." *NRDC, Inc. v. Ill. Power Res. Generating, LLC*, 2018 U.S. Dist. LEXIS 9854, *14, 2018 WL 497066 (C.D.Il. Jan. 22, 2018).

### C. Attorney-Client Privilege

The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients . . . [because] sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S. Ct. 677, 682, 66

L. Ed. 2d 584 (1981).  "Open communication assists lawyers in rendering legal advice, not only to represent their clients in ongoing litigation, but also to prevent litigation by advising clients to conform their conduct to the law and by addressing legal concerns that may inhibit clients from engaging in otherwise lawful and socially beneficial activities." *United States v. BDO Seidman, LLP,* 492 F.3d 806, 815 (7th Cir. 2007) (*citing United States v. Frederick,* 182 F.3d 496, 500 (7th Cir. 1999)).

The attorney-client privilege protects communications made in confidence by a corporation's employees to the corporation's attorney, when acting as an attorney and not a business advisor, for the purpose of obtaining legal advice for the corporation. *Upjohn*, 449 U.S. at 394-99; *see also Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2009).  The privilege extends to factual investigations made by the attorney in order to provide legal advice to the client, and any factual statements made by the employee to the attorney pursuant to such an investigation are privileged.  *Sandra T.E.*, 600 F.3d at 619-20; *Babych v. Psychiatric Solutions, Inc.*, 271 F.R.D. 603, 608-610, 2010 U.S. Dist. LEXIS 132577, *14.  The privilege protects "not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390; *Babych v. Psychiatric Solutions, Inc.*, 271 F.R.D. 603, 608-610, 2010 U.S. Dist. LEXIS 132577, *14. The privilege belongs to the client, although an attorney may assert the privilege on the client's behalf. *Sandra T.E.*, 600 F.3d at 618; *Babych v. Psychiatric Solutions, Inc.*, 271 F.R.D. 603, 608-610, 2010 U.S. Dist. LEXIS 132577, *14.  The privilege is construed narrowly. *U.S. v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997).

## ARGUMENT

**A. Items 9-18 on the Privilege Log are work-product privileged.**

*Lippert v. Ghosh*, N.D.Il 10-4603, is a statewide class action for injunctive relief under the Eighth Amendment to the U.S. Constitution.  A district court in the Northern District of Illinois certified a class for injunctive relief under Federal Rule of Civil Procedure 23(b)(2) consisting of "all prisoners in the custody of the [IDOC] with serious medical or dental needs."  *Orr,* Doc. 484 at 2.  The Court enlisted a team of experts led by Dr. Ronald Shansky to investigate and write a report for the Court's use in that litigation and in anticipation of litigation.  Dr. Shansky's team submitted a report in *Lippert v. Ghosh* in December 2014.

Leading up to the submission of the report by Dr. Shansky, Wexford was provided information that was intended to become part of the report.  A group consisting of legal counsel for Wexford (Andrew Ramage), Wexford officers, and other managerial employees whose roles within the company afforded special access to information related to the *Lippert* litigation evaluated information that was to be submitted as part of the report.  They conferred among themselves about the information and prepared to submit a response to Wexford legal counsel to prepare comments to the expert report in *Lippert*.  The Wexford management employees circulated emails discussing the response and circulated drafts of a proposed response on behalf of the company to legal counsel.  Many of these communications were sent to legal counsel, and all of the communications were accumulated to be reviewed by counsel for Wexford in *Lippert*.  These communications are the documents that appear at Items 9-18 in Defendants' Privilege Log.  *See* Doc. 184-4.

Chronologically, the first such entry on the report is at Item 18, which is described on the Privilege Log as an "Email forwarding analysis done on behalf of Wexford to prepare to respond to the expert report in *Lippert v. Ghosh*."  (*See* Doc. 184-4, p. 7.)  As reflected on the Log, the

9

email was authored by Dr. Thomas Lehman on September 22, 2014.  Thomas Lehman, M.D., was identified on the Privilege Log as the Corporate Medical Director of Wexford (since deceased). (*See* Doc. 184-4, p. 2).  The recipients of the email are identified on the Log and include a set of high-ranking Wexford staff, including Cheri Laurent, the Wexford Vice President of Special Projects, Elaine Gedman, Wexford Executive Vice President and Chief Administrative Officer, and Joseph Ebbitt, the Wexford Director of Risk Management.  The entry for this document describes the basis for a work product privilege that it was "forwarding analysis done on behalf of Wexford to prepare to respond to the expert report in *Lippert v. Ghosh*."  The entry cites Fed. R. Civ. P. 26(b)(3).

The Privilege Log reflects that this email was followed by a series of emails by other Wexford management who sent similar emails circulating proposed comments in response to the Shansky expert report on behalf of Wexford.  On September 26, 2014, emails discussing the Wexford response to the report were sent by Dr. Lehman, and Wexford Regional Medical Directors, Art Funk and Roderick Matticks.  (Item 17 on the Privilege Log.)  Dr. Lehman sent another such email on September 29, 2014.  (Item 16).  The next few communications about Wexford's response to the *Lippert* expert report were sent by Stephen Ritz, Wexford Corporate Utilization Management Medical Director, and Dr. Neil Fisher, the Utilization Management physician.  They were circulated among high-ranking Wexford staff and Andrew Ramage, outside legal counsel for Wexford in the *Lippert v. Ghosh* matter.  (Items 10-15).  Outside counsel, Mr. Ramage, then authored the last communication in the series, writing to the same group of high-ranking Wexford staff regarding the company's response to in the expert report in *Lippert v. Ghosh*.  (Item 9).

The Seventh Circuit has held that the "threshold determination" in any case involving an assertion of the work product privilege, "is whether the materials sought to be protected from disclosure were in fact prepared in anticipation of litigation." *Binks Mfg. Co. v. National Presto Industries, Inc.*, 709 F.2d at 1118.  The documents identified at Items 9-18 in the Privilege Log are the definition of documents subject to work product privilege because they were authored by the staff and legal counsel of Wexford engaged in preparing the company's response to an expert report in ongoing litigation and in anticipation of further litigation.

## B.  Defendants properly asserted work product privilege over Items 9-18 on the Privilege Log.

"A party who invokes any privilege [] must . . . provide to the opposing party a privilege log containing the following information for each document not disclosed: (1) the name and job title or capacity of the author(s)/originator(s); (2) the names of all person(s) who received the document or a copy of it and their affiliation (if any) with the producing party; (3) a general description of the document by type ( *e.g.,* letter, memorandum, report); (4) the date of the document; and (5) a general description of the subject matter of the document." *Alford v. Aaron Rents, Inc.*, 2010 U.S. Dist. LEXIS 67790, *45-46, 2010 WL 2765260 (S.D.Il. May 17, 2010) (*quoting In re Bridgestone/Firestone, Inc., ATX, ATX II,* 129 F. Supp. 2d 1207, 1218-19 (S.D. Ind. 2001)).  This information is required to provide the information necessary for a party to oppose an assertion of privilege.  *See Muro v. Target Corp.*, 250 F.R.D. 350, 364 (N.D. Ill. 2007).

The descriptions for Items 9-18 on the Privilege Log include the necessary elements to assert a privilege, including identifying the author, the recipients, a general description of the document by type (e.g., email) and date, and a general description of the subject matter of the documents.  *Alford v. Aaron Rents, Inc.*, 2010 U.S. Dist. LEXIS 67790, *45-46, 2010 WL 2765260.

**C. Plaintiff did not provide reasons why Items 9-18 were not properly work product privileged in the Motions to Compel.**

In her first Motion to Compel (Doc. 173), Plaintiff argued that the Mortality Worksheet on Craigory Green (Items 1 and 2 on the Privilege Log) was not privileged pursuant to the Illinois Medical Studies Act (ILMSA).  Plaintiff also argued that the Mortality Worksheet would not qualify as privileged work product, because the Mortality Review "was created for the purpose of 'internal quality control,'" and that they could therefore not have been created in anticipation of litigation.  (*See* Doc. 173, p. 9.)

Plaintiff's arguments in her first Motion to Compel were confined to the privileges asserted over the "mortality review documents," and particularly to Items 1 and 2 on the Privilege Log. While Plaintiff's arguments in that motion could be applied in part to the other Mortality Worksheets appearing on the Privilege Log (Items 6, 7, and 8), Plaintiff's argument regarding work product privilege in the first Motion to Compel has no bearing on the documents appearing as Items 9-18 on the Privilege Log.  Items 9-18 are not Mortality Worksheets, they were prepared in the course of and anticipation of litigation, and they were logged as such.

In Plaintiff's second motion to compel, Plaintiff repeated her argument that neither ILMSA nor work product privilege apply to "the same peer review materials" that were at issue in Plaintiff's first motion to compel but expanded it to apply to Items 9-18 on the Privilege Log in addition to the Mortality Worksheet on Decedent.  (*See* Doc. 184, pp. 9-10.)  Plaintiff repeated her argument against Defendants' assertion of work product privilege over the documents at issue (including Items 9-18) was that documents used for "peer review" purposes, i.e. those over which Defendants asserted ILMSA privilege, could not qualify as work product privileged.  (Doc. 184, p. 11.)  Plaintiff noted that the peer review privilege only applies to those used for "internal quality control or medical study for the purpose of reducing morbidity or mortality, or for improving

patient care." (Doc. 184, p. 12.) Plaintiff argued that the documents over which Defendants asserted work product privilege could not be work product, "as the work product privilege only protects those documents created in anticipation of litigation." *Id.*

Defendants responded to Plaintiff's ILMSA arguments and responded to Plaintiff's argument on work product privilege by noting that Plaintiff did not argue against support for the work product privilege on the *Lippert* materials. (Doc. 186, p. 12.) Defendants noted that "the Privilege Log encompasses communications from counsel regarding responding to the *Lippert* report," which "has different support for its work product privilege than the Mortality Worksheet on Craigory Green." *Id.* Defendants relied upon their assertions of the basis for work product privilege that were stated in their Privilege Log and the fact that they were not factually challenged in the motions to compel, "Plaintiff's objections to work product privilege are conclusory in this motion to compel and do not identify any deficient document or privilege assertion in particular that the Court should overrule." *Id.*

In other words, Plaintiff did not argue that the bases for privilege asserted in the Privilege Log for Items 9-18 were factually invalid or deficient. Plaintiff's only argument against work product privilege for Items 9-18 in the Privilege Log was that the documents were "dual purpose" for non-litigation and litigation purposes and so cannot be work product privileged. (Doc. 184, p. 11.) Plaintiff's argument was that since Defendants asserted the ILMSA peer review privilege, they were precluded from alternatively asserting a work product privilege.

Plaintiff's argument was based on a misapprehension of the law. Defendants did not describe the documents at Items 9-18 on the Privilege Log as having "dual purposes," i.e., that they were prepared in the ordinary course of business as well as being prepared in anticipation of litigation. While it is true that Defendants asserted alternative bases for privilege over the *Lippert-*

13

related communications—ILMSA, peer review privilege and work product privilege—the descriptions of the documents at Items 9-18 are unequivocal in that they were prepared to discuss and formulate Wexford's response to the expert report in *Lippert*. (*See* Doc. 184-4.) The purpose of these documents was to aid in litigation and anticipation of litigation only and for no other purpose. Defendants argued as much in their response to the second Motion to Compel. (Doc. 186, p. 12.) But even if Items 9-18 were "dual purpose" documents, per Seventh Circuit jurisprudence they could still have been work product privileged. *See Binks Mfg. Co. v. National Presto Industries, Inc.*, 709 F.2d at 1119; *Webster Bank, N.A. v. Pierce & Assocs., P.C.*, 2018 U.S. Dist. LEXIS 18653, *13-14; *NRDC, Inc. v. Ill. Power Res. Generating, LLC*, 2018 U.S. Dist. LEXIS 9854, *14, 2018 WL 497066 (C.D.Il. Jan. 22, 2018).

**D. Items 9 and 11-15 are attorney-client privileged.**

The documents that are Items 9-18 are confidential communications among Wexford staff and their counsel to prepare to submit an argument in *Lippert v. Ghosh*. Items 9 and 11-15 were sent to or by Andrew Ramage, who was identified on the Privilege Log as outside counsel for Wexford. (*See* Doc. 184-4.) Defendants asserted attorney client privilege on Item 9 on the Privilege Log and described it as confidential communications with counsel for the purpose of aiding in litigation and in anticipation of litigation for Item 9. They therefore provided proper support for their assertion of attorney client privilege over that document. *See Upjohn*, 449 U.S. at 394-99; *see also Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2009). The basis for asserting attorney client privilege is provided as well as for Items 11-15. Due to an oversight, counsel did not list attorney-client privilege for items 11-15, although Mr. Ramage is clearly listed as a participant in the communications on the Privilege Log.

Plaintiff did not advance any argument for why the document at Item 9 should not be deemed attorney-client privileged. Defendants noted in their response to the second Motion to Compel that Items 9-18 were different from the Mortality Worksheets in that they regarded the *Lippert* litigation and had different bases asserted for privilege. The Court did not address the attorney-client privilege before ordering the production of at Items 9-18. Defendants' privilege was summarily overruled in an abrogation of law on privilege.

**E.  The Court was in error to order production of Items 9-18 on the Privilege Log.**

Defendants respectfully submit that the Court erred in overruling the work product and attorney client privileges asserted over Items 9-18 on the Privilege Log.

In its Order granting in part Plaintiff's Motions to Compel, the Court quoted *Jumper v. Yellow Corp.,* 176 F.R.D. 282, 287 (N.D. Ill. 1997), that there is "no work product immunity for documents prepared in the ordinary course of business rather than for litigation purposes." (Doc. 212, p. 8.) This is an accurate description of the law, but it is incomplete. As noted above, per the relevant Seventh Circuit jurisprudence, "dual purpose" documents are still work product privileged if the "primary motivating purpose" behind their creation was to aid in litigation and in anticipation of litigation. *Binks Mfg. Co. v. National Presto Industries, Inc.*, 709 F.2d at 1119.

The Court also cited *Urban 8 Fox Lake Corp.v. Nationwide Affordable Housing,* 334 F.R.D. 149, 156 (N.D. Ill. 2020), in support of the principle that blanket assertions of privilege are not valid. Items 9-18 on the Privilege Log, however, pertain to particularly identified documents, and the rule against blanket assertions of privilege stated in *Urban 8 Fox Lake Corp.* is inapposite here.

The "threshold determination" in any case involving an assertion of the work product privilege, "is whether the materials sought to be protected from disclosure were in fact prepared in anticipation of litigation." *Binks Mfg. Co. v. National Presto Industries, Inc.*, 709 F.2d at 1118.

Items 9-18 on the Privilege Log consist of email with forwarded content pertaining to Wexford's management staff and legal counsel discussing their response to an expert report in litigation. These documents, as described on the Privilege Log, clearly meet the threshold stated in *Binks Mfg Co.* for qualifying for work product privilege.   Plaintiff's motions to compel do not raise any credible argument against that conclusion.

The Court was erroneous to find that Defendants did not assert the privilege.  The Court's order is based on the finding that the documents had a "dual purpose" because Wexford asserted an ILMSA peer review privilege in addition to the work product privilege.  But as noted above, documents that have a "dual purpose" of both an investigative nature and preparation for litigation can be work product privileged where the primary motivating purpose behind the creation of a document or investigative report is to aid in litigation. *Binks Mfg. Co. v. National Presto Industries, Inc.*, 709 F.2d at 1119; *Webster Bank, N.A. v. Pierce & Assocs., P.C.*, 2018 U.S. Dist. LEXIS 18653, *13-14. "Where a document is prepared because of the prospect of litigation, analyzing the likely outcome of that litigation, it does not lose protection because it is also created in order to assist with a business decision." *NRDC, Inc. v. Ill. Power Res. Generating, LLC*, 2018 U.S. Dist. LEXIS 9854, *14, 2018 WL 497066 (C.D.Il. Jan. 22, 2018).  Accordingly, even if the documents at Items 9-18 on the Privilege Log had been created for a dual purpose, which they were not, that would not complete the analysis of whether they could be work product privileged, and the Court's Order was contrary to Seventh Circuit jurisprudence.

Likewise, the Court received no argument regarding the assertion of attorney-client privilege and made no findings that the privilege was not supported.  Accordingly, ordering production of Item 9 was not supported by the facts and was contrary to the law protecting attorney-client privilege.

**F. Forcing the disclosure of Items 9-18 will cause irreparable harm and prejudice to Defendants in this case, in *Lippert v. Ghosh*, and in other cases.**

*Lippert v. Ghosh* is a 2010 class action lawsuit against the Illinois Department of Corrections regarding medical and dental care, where the court ordered an expert under Federal Rule of Evidence 706 to address certain allegations in the case. Significantly, the Order appointing an expert to complete the report expressly provides "[t]he Expert, his consultants and assistants shall not provide opinion and/or testimony in unrelated cases based on knowledge and/or information gained in the course of performing their services in this matter." NDIL 10-4603, (Doc. 244, p. 2). The *Lippert v. Ghosh* court, therefore, acted to limit the application of the 2014 expert report in light of the particular circumstances of its inception to avoid prejudice to the parties in that litigation.

Accordingly, reference to the *Lippert* reports at trial in this litigation would constitute inadmissible hearsay and would lack proper foundation. FRE 602; FRE 802; *Shawn Lucas v. Dr. Fenolgia and Wexford Health Source, Inc.*, SDIL, 14-1008, (Doc. 123); See *Diaz v. Chandler*, 2016 U.S. Dist. LEXIS 35450 (N.D. Ill. Mar. 18, 2016); *Armbruster v. Illinois Department of Corrections et al.,* 3:16-cv-00544-SMY-MAB, SDIL (Doc. 230); *Thornton v. Lashbrook et al,* 3:17-cv-00761-SMY-RJD, SDIL (Doc. 235).

Forcing production of Items 9-18 would violate public policy in favor of protection of work product privilege. The U.S. Supreme Court has stated that strong public policy supports protection of work product, and "forcing an attorney to disclose notes and memos of witness oral statements is particularly disfavored because it tends to reveal the attorney's mental processes." in *Upjohn Company v. U. S.*, 449 U.S. at 399, 101 S. Ct. at 687. Ordering production of Wexford's internal communications wherein they discussed legal strategy for responding to an expert report in a decade-long class action would cause prejudice to Wexford in this case as well as in *Lippert v.*

17

*Ghosh*.  Their unguarded, internal, confidential communications regarding matters in litigation among Wexford staff and their legal counsel before responding to litigation were the essence of what should be protected under work product privilege.

Likewise, the summary overruling of attorney client privilege would be contrary to public policy as stated by the U.S. Supreme Court.  The Court has stated that the purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients . . . [because] sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client."  *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S. Ct. 677, 682, 66 L. Ed. 2d 584 (1981).  Here, the Court's order overruling Defendants' attorney-client privilege, which was asserted for Item 9 on the Privilege Log, without argument or findings that it was not supported, is contrary to the law supporting protection of that privilege and would frustrate the policy in favor of protecting the parties' confidential communications with their attorneys.

## CONCLUSION

Between her first Motion to Compel and her second, Plaintiff expanded her argument from one on why the Mortality Worksheet on Decedent was not subject to ILMSA peer review privilege and work product privilege to one that applied to Items 9-18 on the Privilege Log.  Items 9-18 on the Privilege Log simply had a separate set of factors supporting privileges than did the Mortality Worksheet.  As Defendants argued in response to the second Motion to Compel, the descriptions of the privileges asserted for those documents was completely distinct from the Mortality Worksheets and pertained to preparation of materials related to the *Lippert v. Ghosh* litigation.  While in retrospect, Defendants would have preferred to have advanced a more detailed argument on that point, the essence of the argument was asserted in the briefing, and Defendants' Privilege

Log, attached to the briefing, provided a description of the privileges asserted.  In light of that and in light of the strong public policy in favor of protecting work product privilege over "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative," the Court was in error to summarily overrule the privileges.

The Court's overruling of Defendants' assertion of attorney-client privilege, based on Plaintiff's argument that ILMSA peer review privilege was unsupported and work product privilege did not apply, was in error because it was not based on a finding that the attorney client privilege was not supported.  Such summary overruling of attorney client privilege is contrary to the law and to policy supporting protection of such privilege.

For the above reasons, Movants request that the Court revise its Order so that it does not compel production of Items 9-18.

Defendants also seek leave to revise their Privilege Log to assert attorney-client privilege over items 11-15 on the basis that outside counsel for Wexford was a recipient of such communications and the nature of the communications was to seek legal advice.

Defendants further propose that, given the documents' role as discussing legal strategy in a class action that is more than a decade old, and given the assertion of privileges over the documents, if the Court is inclined to consider affirming its order that the documents to be produced, the Court should review the documents in camera.

Respectfully submitted,

CASSIDAY SCHADE LLP

By:  /s/ Ryan C. Wallis
    One of the Attorneys for Defendant, WEXFORD HEALTH SOURCES, INC., MOHAMMED SIDDIQUI, M.D., VIPIN SHAH, M.D., MICHAEL MOLDENHAUER, N.P.; and MARY JO ZIMMER, N.P.

Ryan C. Wallis
ARDC No. 6288689
CASSIDAY SCHADE LLP
100 North Broadway, Suite 1580
St. Louis, MO 63102
(314) 241-1377
(314) 241-1320 (Fax)
rwallis@cassiday.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2023, I electronically filed the foregoing Motion with the Clerk of the Court using the CM/ECF system.  The electronic case filing system sent a "Notice of E-Filing" to the following:

ATTORNEY FOR CO-DEFENDANTS:
Kyrstin Beasley
Illinois Attorney General's Office
201 W. Pointe Drive
Suite 7
Belleville, IL 62226
Kyrstin.beasley@ilag.gov

ATTORNEYS FOR PLAINTIFF
Sarah C. Grady
Howard Kaplan
Kaplan & Grady, LLC
1953 N. Clybourn Avenue
Suite 274
Chicago, IL 60614
sarah@kaplangrady.com
howard@kaplangrady.com

/s/ Ryan C. Wallis