IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| VICTORIA GREEN, as Administrator of the Estate of Craigory Green, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 20 C 0463 |
| STEVE MEEKS, et al., | ) ) | Hon. Stephen P. McGlynn |
| Defendants. | ) ) | |

### PLAINTIFF'S MOTION TO ENFORCE THE COURT'S FEBRUARY 1, 2023 DISCOVERY ORDER

As Plaintiff previewed in her opposition to Wexford's motion to reconsider and for an extension of time, Wexford has taken an implausibly narrow view of the Court's February 1 discovery Order (Dkt. 212). In particular—and the subject of this Motion—Wexford has refused to conduct **any** email searches for responsive documents subject to the Court's Order. In fact, Wexford's position is so absolute that Wexford has refused even to negotiate the scope of potential searches, terms, and the review strategies that would avoid an undue burden. Wexford's refusal to negotiate toward a compromise is anathema to discovery in federal court (or any court). *See, e.g.,* Fed. R. Civ. P. 1; Committee Note on Rules—2015 Amendment (reminding parties of their obligation to cooperate to avoid needless delays and costs).

The specific issue Plaintiff has been forced to bring to the Court is simple but critical. In response to Plaintiff's Request Nos. 15, 32, and 33 for death documents—*i.e.*, for documents pertaining to prisoner deaths related to transplants, liver disease, and at Menard during the Court-ordered date ranges—Wexford has produced formal death notification documents. Those formal documents state the cause of death and the individual's name, but not much more. Plaintiff, however, has not requested death documents to generate a list of names of deceased prisoners.

That, alone, is useless. The point of the discovery ordered by the Court is to facilitate expert analysis of deaths that present analogous situations, which allows Plaintiff to develop her *Monell* case about the polices, widespread practices, and customs that led to Craigory Green's decades-premature death. To make that possible, information is needed about Wexford's care for these individuals. The most straightforward way to obtain that information is through an email search that would capture at least some of those essential details.

Plaintiff accordingly asked Wexford to run searches for the names of individuals whose deaths Wexford has *already* determined are responsive to Plaintiff's requests, and only for a few months before that individual's death and a month after. Wexford said no, flatly claiming that doing so would be a burden. Wexford held to its "no" and refused to negotiate even as Plaintiff repeatedly offered solutions to moderate any potential burden—to assure that it would not be an *undue* burden for Wexford.

Plaintiff therefore respectfully asks the Court to order Wexford to run searches for the names and IDOC numbers of certain deceased prisoners in the body (as opposed to attachments) of emails for a period of *five* months before the death and *one* month after. In addition to ordering Wexford to run these limited searches—without which the information Wexford has provided is virtually meaningless—the Court should require Wexford to pay Plaintiff's reasonable attorney's fees and costs related to this Motion, as required under Rule 37.

**Background**

On October 28, 2018, at just 30 years old, Craigory Green died of liver failure and its brutal symptoms. There was no need for Craigory to die from his long-diagnosed condition, primary sclerosing cholangitis (PSC). Defendants knew this, as illustrated by their ultimate approval of Craigory for a transplant. The Defendants' failures of care, however, included years and months

of inexcusable delay, despite full knowledge that Craigory's life was in the balance. By the time Defendants finally put Craigory in a position to actually obtain a liver transplant, it was too late.

Given the number of discovery motions that Plaintiff has been forced to file and the Court's recent ruling, she trusts that the Court is familiar with Craigory's case and the general course discovery has taken. Relevant to this Motion, on February 1, 2023, the Court granted in part Plaintiff's motions to compel documents responsive to certain requests. Included in the Court's grant were three requests related to prisoner deaths:

- **Request No. 15**: All Documents since January 1, 2011 relating to the deaths of any prisoner who died after the IDOC or Wexford declined, refused, or delayed an organ transplant.

- **Request No. 32**: All Documents since January 1, 2010 relating to deaths of prisoners from liver disease where Wexford is contractually responsible for providing medical care. This request includes medical records, death investigations, *and related correspondence*.

- **Request No. 33:** All Documents relating to deaths of Menard prisoners between January 1, 2010 and the present, excluding deaths caused by homicide.

*See* Dkt. 212 at 19–20. The Court ordered Wexford to produce responsive documents by February 15, 2023. *Id*. at 21. On February 15, Wexford filed motions for an extension of time and to reconsider. Dkts. 214, 215. Importantly, Wexford did **not** ask the Court to reconsider its ruling on Request Nos. 15, 32, or 33. Dkt. 212 at 3 ("The instant motion for reconsideration is narrowly focused on … the internal Wexford emails and attachments discussing the Wexford response to the 2014 expert report that was issued in *Lippert v. Ghosh*, appearing as Items 9-18 on the Privilege Log.").

On March 9, Plaintiff contacted Wexford to say that even the date offered in Wexford's motion for extension of time had passed, and Wexford's production was still woefully deficient. On March 10, Wexford responded that it had a few more documents to produce and then, from its perspective, its productions in response to the Court's February 1 Order would be complete. Wexford asked Plaintiff to confirm this understanding. On the same day, Plaintiff responded that she did not agree and that the parties should have a meet and confer. On March 14, Plaintiff spoke with Wexford and outlined the request for email searches. Wexford's counsel said he would have to speak with his client to see if it would agree to Plaintiff's request. On March 17, Plaintiff and Wexford met again. Wexford's counsel informed Plaintiff that it would not do any email searches—period. Wexford confirmed that Plaintiff and Wexford were at an impasse, forcing this Motion.

## Argument

Respondents in discovery are required to conduct a "reasonable search for responsive documents." *GlobalTap, LLC v. Petersen Mfg. Co., Inc.*, No. 1:18-cv-05383, 2021 WL 3292261, at *7 (N.D. Ill. July 29, 2021); *see also Deal Genius, LLC v. O2COOL, LLC*, No. 21 C 2046, 2022 WL 17418933, at *2 (N.D. Ill. Oct. 24, 2022) (respondents in discovery have "the duty of reasonable inquiry under Federal Rule of Civil Procedure 26(g)(1)."). A reasonable search undoubtedly includes searches of digital depositories, including emails. *See DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 926 (N.D. Ill. 2021) ("[I]t is almost quaint now to say that all litigation involves ESI. Nevertheless, counsel are still rightfully reminded that '[e]ven in the smallest of cases these days, electronic data—especially email—play a role.'" (quoting George Socha & Margaret Wolf, *Why Can't I Just Review it in Outlook?*, 102 Judicature 9 (2018))). Where there is a disagreement between the parties over the scope of discovery, courts

expect the parties to negotiate in good faith toward a resolution. *See, e.g., Gunn v. Stevens Sec. & Training Servs., Inc.*, 2018 WL 1737518, at *3 (N.D. Ill. 2018) ("A party that steadfastly maintains a position without support is not engaging in a good faith discussion.").

If the parties are unable to reach an agreement on their own, "[t]he party opposing discovery has the burden of proving that the requested discovery should be disallowed." Dkt. 149 (*Green v. Meeks*, No. 20-cv-00463-SPM, 2021 WL 3631264, at *4 (S.D. Ill. July 14, 2021) (quoting *Peppers v. Credit One Bank, N.A.*, No. 17-2190, 2018 WL 8244003, at *2 (C.D. Ill. Dec. 21, 2018).)). "[I]f a party is to resist discovery as unduly burdensome, it must adequately demonstrate the nature and extent of the claimed burden by making a specific showing as to how disclosure of the requested documents and information would be particularly burdensome." *Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum LLC*, 2007 WL 1164970 at *4 (N.D. Ind. Apr. 18, 2007) (quotation omitted). Further, in considering matters of proportionality, Rule 26(b) directs courts to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b).

Because Wexford has taken a hard line on email searches—a flat "no," and a refusal to do the work of compromise essential to discovery—Wexford's objection must be overruled. It appears that Wexford has gone so far as to forbid its counsel from engaging in good-faith negotiation toward compromise, even in the wake of the Court's February 1 Order. Moreover, the *only* objection Wexford has offered for its refusal to conduct the requested searches is "burden." But Wexford has not explained to Plaintiff or to the Court in a motion for protective order (or to reconsider) how much time, what cost, or what measures might make Plaintiff's request less

5

onerous. It is no surprise that Wexford has failed to do so, because without running the requested search for some number of individuals—or otherwise getting into the details at all—its burden argument is entirely speculative and unsubstantiated. Wexford's objection should be summarily overruled.

To the extent that Wexford may also assert a proportionality concern, Plaintiff has explained to Wexford exactly why she believes the discovery targeted by its requested search is essential to her case. Specifically, Plaintiff has explained that she requires the requested information to develop her *Monell* claim, which necessitates proof of an unconstitutional policy, practice, or custom. *See, e.g.*, *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). In this case, such a claim is likely to require proof that the constitutional violations that led to Craigory's death also caused harm to others. To know about the constitutional violations involved in the care of prisoners that died in analogous circumstances, Plaintiff needs to know about the care these prisoners received. The formal documents that Wexford has produced do not do that. A notice of death, for example, provides only a prisoner's name, place of incarceration, IDOC number, date of birth, date (and location) of death, and diagnosed cause of death. In several instances, not even all of these details are filled out. Plaintiff therefore needs Wexford to provide information about care, and the easiest way to do that is to produce the summaries and discussions about the deaths that occur by email. As discussed, Wexford has refused, offering a boilerplate and uninformed burden objection.

Plaintiff's counsel has made vigorous efforts to compromise and negotiate around Wexford's objection, proposing that Wexford search only the body of email, to avoid hits on spreadsheet attachments that often contain thousands of prisoner names. Plaintiff also offered a narrow timeframe and terms limited to only the name and IDOC number of those who died under

6

relevant conditions. Plaintiff further offered to proceed iteratively, and she would have been willing to modify searches if the returns are too high. But the Plaintiff and Wexford never got to hit counts or strategies for narrowing or otherwise lightening any burden, because Wexford flatly refused to go down any path toward any compromise. In this context, Wexford's refusal to compromise is also in defiance of the Court's February 1 Order, which already compels Wexford to produce these documents—with a deadline that passed six weeks ago. *See* Dkt. 212 at 19–21.

The Court should therefore intervene to require Wexford to perform the following reasonable search:

- *Scope*: Body of Wexford email.
- *Terms*: Names and IDOC numbers of individuals Wexford has identified via production.
- *Date Range*: Five months before each individual's death and one month after.

Wexford is likely to respond that Plaintiff could subpoena medical records for these individuals from the IDOC (who is not a party in this case). But that request would target tens-of-thousands of pages of documents. Plaintiff is entitled to *Wexford's* emails on this topic, which summarize and occasionally analyze the care it provided—and those results will be far less voluminous and more to the point. In other words, Wexford's email is far and away the most efficient source of the information Plaintiff requires. *See Fulton v. Foley*, No. 17-cv-8696, 2019 WL 6609298, at *4 (N.D. Ill. Dec. 5, 2019) (endorsing discovery procedure that would help "obtain documents" that are 'relevant and non-privileged in the most efficient and cost-effective manner."). The Court should order Wexford to conduct Plaintiff's requested search and to promptly review and produce responsive documents.

**Request for Attorney's Fees**

Rule 37(b)(2) provides that when a party fails to obey an order to provide discovery, the Court "must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. 37(b)(2).

As before (*see* Dkt. 218), Plaintiff does not make this request for fees lightly. Plaintiff did everything in her power to encourage Wexford to comply with the Court's Order and to conduct a reasonable search. Wexford rebuffed Plaintiff's efforts, as explained throughout this Motion. As a result, Plaintiff has spent roughly 10 hours perfecting the dispute and on this Motion. If the Court grants this relief, as it should, it should also order Wexford to pay these fees. Plaintiff is prepared to promptly submit a detailed fee petition along with declarations demonstrating her counsel's billing rate.

**Conclusion**

For the foregoing reasons, the Court should grant Plaintiff's Motion and order Wexford to conduct searches of Wexford's email servers for the names and IDOC numbers of prisoners that died in situations that Wexford concedes are generally analogous, *i.e.*, situations involving deaths from liver failure and deaths at Menard. In addition, under Rule 37, the Court should award Plaintiff her reasonable attorney's fees for her efforts to enforce the Court's February 1 Order.

                                            Respectfully submitted,

                                            /s/ Howard Kaplan
                                            Howard Kaplan
                                            Attorney for Plaintiff

Howard Kaplan
Sarah Grady
KAPLAN & GRADY LLC
1953 N. Clybourn Ave., Suite 274
Chicago, IL 60614
(312) 852-2641
howard@kaplangrady.com
sarah@kaplangrady.com

## CERTIFICATE OF SERVICE

      I, Howard Kaplan, an attorney, certify that on March 27, 2023, I caused the foregoing to be filed using the Court's CM/ECF system, which effected service on all counsel of record.

      /s/ Howard Kaplan
      Howard Kaplan
      Attorney for Plaintiff